569 So.2d 1062 (1990)
Edward W. UHRICH, Plaintiff-Appellee,
v.
NATIONAL FIRE INS. COMPANY, et al., Defendants-Appellants.
No. 89-576.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1990.
Writ Denied January 11, 1991.
Fuhrer, Flournoy, Leonard Fuhrer, Alexandria and J.W. Pucheu, Ville Platte, for plaintiff-appellee.
Gachassin, Hunter, Robert A. Mahtook, Nicholas Gachassin, Lafayette, for defendant-appellant.
McLure & Pickels, John G. McLure, John C. Pickels, Eugene Cicardo, Alexandria, Guglielmo, Lopez, James T. Guglielmo, Opelousas, Hall, Lestage, F. Steve Landreneau, DeRidder, McGlinchey, Stafford, Ernest P. Gieger, Jr., New Orleans, for defendants-appellees.
*1063 Before FORET, DOUCET and KNOLL, JJ.
KNOLL, Judge.
Defendant, St. Paul Fire & Marine Insurance Company, (St. Paul) appeals the trial court's granting of a motion for partial summary judgment in favor of plaintiffs, Edward W. Uhrich (the undercurator of Dr. Edward C. Uhrich) and Mrs. E.C. Uhrich on the issue of uninsured motorist (UM) coverage. On appeal, St. Paul contends the trial court erred in concluding that no genuine issue of material fact exists and, as a matter of law, Dr. Uhrich was protected by $1,000,000 of UM coverage by a St. Paul insurance policy.
The procedural posture of this case requires only the following pertinent facts.
On December 26, 1987, Dr. Uhrich suffered severe injuries in an automobile accident. He was a passenger in his automobile driven by his wife, Wilma Uhrich. Dr. Uhrich's son, Edward C. Uhrich, filed suit on his behalf against numerous parties including St. Paul, the UM carrier. No party disputes that at the time of the accident, Dr. Uhrich was protected by a standard automobile liability policy issued by St. Paul with UM limits of $300,000 and a personal liability catastrophe policy issued by St. Paul with liability limits of $1,000,000. Attached to the latter policy was a document wherein Dr. Uhrich purportedly rejected UM coverage. As of November, 1988, Dr. Uhrich's cost of continuing medical care totaled $278,139.54.
After initial discovery, both plaintiffs and St. Paul filed cross-motions for partial summary judgment on the issue of UM coverage under the catastrophe policy. At the hearing on the cross-motions, plaintiffs contended that the purported rejection slip failed to meet the requisite legal formalities and was invalid because: 1) the document did not contain the insurance policy number; and 2) the document failed to offer a selection of UM limits lower than the liability coverage, $1,000,000.
In its cross-motion, St. Paul averred that: 1) Dr. Uhrich's signature on the rejection slip unambiguously shows that he rejected UM coverage; and 2) the rejection slip is valid despite the absence of the policy number.
After considering the evidence, which consisted of the catastrophe policy with the attached rejection slip and an affidavit from the insurance agent who sold the policy to Dr. Uhrich, the trial court granted plaintiffs' motion for partial summary judgment concluding that the rejection slip is invalid since it failed to offer lower limits of UM coverage. The trial court reasoned that before an insured can validly reject UM coverage, he must first have a meaningful selection from which to choose.

UM REJECTION LAW
At the time of the accident, the Louisiana UM statute, LSA-R.S. 22:1406(D), provided in pertinent part:
"(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state or as provided in this Subparagraph unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. *1064 (ii) After September 1, 1987, such rejection or selection of lower limits shall be made only on a form designed by each insurer. The form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto." (Emphasis added.)
The object of the statute is to promote recovery of damages for innocent automobile accident victims by making UM coverage available for their benefit as primary protection when the tortfeasor is inadequately insured. Block v. Reliance Ins. Co., 433 So.2d 1040 (La.1983).
To implement this objective of providing reparation for those injured through no fault of their own, the Louisiana Supreme Court has held that the UM statute is to be liberally construed. Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982). In accord, the UM statute applies to umbrella or excess insurance policies which cover liability arising out of the ownership, maintenance, or use of any motor vehicle. Southern Am. Ins. v. Dobson, 441 So.2d 1185 (La.1983).
The liberal construction of the UM statute requires the statutory exceptions to the coverage requirement be interpreted strictly. The insurer bears the burden of proving that the insured rejected UM coverage in writing. Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987).
This court has repeatedly reaffirmed the rule that a document, which fails to offer UM coverage in amounts lower than the liability coverage, does not satisfy the requirements mandated by the UM statute. Carlson v. Safeco Ins. Co., 499 So.2d 664 (La.App. 3rd Cir.1986), writ denied, 503 So.2d 477 (La.1987); see also Guilbeau v. Shelter Mut. Ins. Co., 549 So.2d 1250 (La. App. 3rd Cir.1989). This "meaningful selection" rule is well-reasoned, since an insured must be given a meaningful selection from which to choose if the UM statute is to be followed. Otherwise, an insured who desires lower limits of UM coverage would be forced to reject UM coverage simply because the UM insurance form fails to comply with the statute.
In a similar case involving a UM rejection slip, our brethren of the Fourth Circuit declared a UM rejection slip invalid solely because it failed to offer a selection of limits, albeit higher limits. Aramburo v. Travelers Ins. Co., 426 So.2d 260 (La.App. 4th Cir.1983), writ denied, 433 So.2d 161 (La.1983). In that case, the insured selected liability limits of $100,000. The back of the insurance application offered either 5/10 UM limits or a complete rejection. No other amounts were offered. Commenting on the UM rejection slip, our brethren stated:
"That form did not afford an applicant the opportunity to `select lower limits' because it offered no `selection' of limits. It is not subject to any other interpretation than that there are only two choices: `5/10' coverage or rejection. In effect it denied that there were any other available limits from which the applicant (the insured) could select. As a matter of law, no one can `select lower limits' unless higher limits are also available. Because no other limits were offered her, we reject the contention that our applicant `selected' 5/10 coverage by executing the application in evidence." Id. at 261-62.
Summary judgment is appropriate only if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La.C.C.P. Art. 966B.
In the case sub judice, neither party disputes that Dr. Uhrich was offered only two options: full UM coverage or a rejection of UM coverage. The UM rejection slip offers $1,000,000 UM limits but fails to offer any limits lower than that amount. The form does not contain a blank wherein Dr. Uhrich, if he desired, could have requested UM limits lower than his liability coverage of $1,000,000.
*1065 In addition, the affidavit of the insurance agent who sold the catastrophe policy to Dr. Uhrich makes it abundantly clear that a selection of lower UM limits was prohibited. Donald M. Coco, the insurance agent, stated under oath that: 1) UM coverage was offered to Dr. Uhrich in one million dollar increments, not to exceed the policy limits; and 2) no insurance company represented by his insurance agency provides UM coverage with limits less than $1,000,000 on a personal umbrella excess liability policy.
In its brief, St. Paul contends that Guilbeau v. Gabriel, 553 So.2d 1078 (La.App. 3rd Cir.1989), writ denied, 559 So.2d 138 (La.1990), is dispositive of the issue. We disagree.
In Guilbeau, supra, this court affirmed the trial court's granting of a motion for summary judgment regarding the rejection of UM coverage wherein the UM rejection slip offered the insured UM coverage equal to liability coverage or in lesser amounts. In contrast to the case sub judice, the UM rejection slip contained a blank space beside UM coverage so that the insured had an unrestricted choice of selecting lower limits. The insured left the blank unfilled and signed her name under the section entitled "Rejection of Uninsured Motorist Coverage". We concluded that the document was a valid rejection of UM coverage since the insured had the option of selecting lower UM limits.
The UM statute mandates UM coverage equal to the liability limits unless the insured, in writing, either rejects UM coverage or selects lower limits. If an insurer is going to avail itself of the statutory exception, it must show that the insured initially had the option of selecting lower UM limits. Anything less fails to satisfy the requirements of LSA-R.S. 22:1406(D).
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.