581 So.2d 723 (1991)
Cecile B. COOPER, et al.
v.
Richard C. HUDDY, et al.
No. 90 CA 0273.
Court of Appeal of Louisiana, First Circuit.
May 16, 1991.
Writ Denied September 20, 1991.
Ron S. Maclauso, Hammond, for plaintiff-appellant Cecile B. Cooper.
Thomas Hogan, Hammond, for plaintiffs-appellants Myra Patsy Cooper, Clarence Ray Cooper, Jeffery Wade Cooper.
Jesse Wimberly, Mandeville, for Melba Cooper Penn, Jeremy Cooper and Miranda Cooper, plaintiffs-appellants.
Michael Mentz, Metairie, Charles A. Schutte, Jr., Baton Rouge, for defendant-appellant La. Ins. Guar. Assoc.
Before EDWARDS, WATKINS and LeBLANC, JJ.
WATKINS, Judge.
This suit presents two clearly defined issues concerning the liability of the Louisiana Insurance Guaranty Association (LIGA) for claim(s) made against an insolvent insurer for the death of Clarence C. Cooper. The issues in dispute are:
1. Whether the wrongful death claims of the plaintiffs constituted one claim or five separate claims under the Insurance Guaranty Association Law, LSA-R.S. 22:1375-22:1394.
2. Whether the amount received by the plaintiffs from another insurance guaranty association should be credited toward the total amount of the judgment in the Louisiana *724 court or toward LIGA's statutory limits.

FACTS
Clarence Cooper was involved in a fatal automobile accident on August 20, 1985, in Tangipahoa Parish, Louisiana, when his pickup truck struck the side of an International tractor trailer owned by S-N-W Enterprises and operated by Richard Huddy in the course and scope of his employment with S-N-W. The facts and circumstances surrounding the accident are not in dispute.
On January 15, 1986, Cecile B. Cooper, surviving spouse of Clarence Cooper, individually and as administratrix of the Succession of Clarence Ray Cooper; and Myra Patsy Farris Cooper (wife from a previous marriage), individually and as legal and natural tutrix of her minor children, Clarence Ray Cooper, Jr.[1] and Jeffery Wade Cooper, filed a wrongful death suit, number 77,711, against Richard C. Huddy, and S-N-W Enterprises.[2] The plaintiffs later amended their suit adding as additional defendants Champion Insurance Company (Champion),[3] Clarence Cooper's automobile liability insurer; and the Integrity Insurance Company (Integrity), the insurer of S-N-W and Richard Huddy.[4]
Subsequently Melba Penn, (also a wife from a previous marriage), as the natural tutrix of her minor children, Jeremy Cooper and Miranda Cooper, filed a wrongful death suit, number 81,328, against S-N-W Enterprises, Richard C. Huddy, Integrity and Champion in the Eastern District of the United States Federal Court.
On March 24, 1987, Integrity was placed in liquidation, triggering potential liability for several state insurance guaranty associations for any "covered claims" arising under the policy of insurance issued by Integrity. Accordingly, the plaintiffs in both suits amended their petitions, naming the Pennsylvania Insurance Guaranty Association (PIGA),[5] the New Jersey Insurance Guaranty Association,[6] and the Louisiana Insurance Guaranty Association[7] as additional defendants. The two suits were subsequently consolidated for trial.
On October 28, 1987, plaintiffs in suit number 77,711 filed a Motion for Declaratory Judgment and/or Summary Judgment, seeking a determination of the maximum liability of PIGA and LIGA. LIGA also filed a Motion for Summary Judgment seeking to have the suit dismissed. Although the trial court rendered judgment in favor of the plaintiffs on their motion, this court took supervisory writs and vacated the summary judgment and further denied LIGA's writ pertaining to the denial of its motion for summary judgment.[8]
*725 On the eve of trial, the plaintiffs in both consolidated suits reached a settlement with PIGA for the statutory maximum of $299,900.00,[9] plus legal interest in the amount of $14,995.00, and court costs in the amount of $1,576.11. The plaintiffs agreed to release S-N-W Enterprises, Richard C. Huddy and PIGA from any further liability for damages as a result of the death of Clarence Ray Cooper, reserving their rights against LIGA. The New Jersey Guaranty Association was voluntarily dismissed from the consolidated suits.
The matter proceeded to trial with the jury finding Richard Huddy sixty-seven percent at fault and Clarence Cooper thirty-three percent at fault. The jury awarded damages to the plaintiffs totalling $1,094,053.85. On motion for JNOV, the trial court increased the award to Cecile B. Cooper for funeral expenses of $9,563.56. Therefore, the total award of all the plaintiffs amounted to $1,103,617.41, from which thirty-three percent ($364,193.75) for the negligence attributable to Clarence Cooper was deducted, leaving a net total award of $739,423.57. LIGA was ordered to pay $149,900.00 proportionately among the plaintiffs in accordance with the jury verdict. The court further ordered LIGA to pay legal interest from the date of judicial demand until paid and all costs of the proceedings. The plaintiffs and LIGA appealed. We reverse.
The plaintiffs argue that the trial court erred in limiting LIGA's liability for all the plaintiffs' claims to $149,900.00. The plaintiffs allege that there are three separate plaintiffs bringing five separate and distinct causes of action for damages, and that each cause of action constitutes a separate claim as defined in the LIGA statute.
At the time that Integrity was declared insolvent, LSA-R.S. 22:1382(1)(a) and (b) and LSA-R.S. 22:1379(3) provided:
LSA-R.S. 22:1382
(1) The association shall:
(a) Be obligated to the extent of the covered claims existing prior to the determination of the insurer's insolvency,... but such obligation shall include only that amount of each covered claim, ... which is in excess of one hundred dollars and is less than one hundred fifty thousand dollars, .... In no event shall the association be obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises.[10]
(b) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent *726 insurer as if the insurer had not become insolvent.
LSA-R.S. 22:1379 Definitions
. . . . .
(3) "Covered claim" means an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Part applies issued by an insurer, if such insurer becomes an insolvent insurer after September 1, 1970 and (a) the claimant or insured is a resident of this state at the time of the insured event; ....
The Integrity insurance policy covering S-N-W Enterprises was a combined single limit policy for $750,000.00. The policy does not define "claim"; however, it does provide that Integrity "will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto." The policy defines bodily injury as "bodily injury, sickness or disease including death resulting from any of these."
The Integrity policy also provides that "[r]egardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the LIABILITY INSURANCE limit [$750,000.00] shown in the declarations."
It is clear that each plaintiff has a personal cause of action for the damages suffered as a result of Clarence Cooper's death. Former LSA-C.C. art. 2315.[11] The question is whether these separate causes of action constitute one or five "covered claims" under the Act.
The Act defines covered claim as an unpaid claim arising out of and within the coverage and not in excess of the applicable limits of an insurance policy. The Integrity policy is a combined single limit policy of $750,000.00, with no separate limits for per person injuries.[12] It is clear that within the terms and limits of the Integrity policy each of the plaintiffs' claims is a "covered claim". Consequently, each claim is a covered claim under the Act and is entitled to the per claim limits of $149,900.00, up to the maximum liability under the Integrity policy of $750,000.00.[13]
The second issue is whether LIGA is entitled to offset amounts the plaintiffs received from PIGA against its statutory maximum or against the total judgment rendered by the lower court. Because we have concluded that each claimant is entitled to the per claim limits of $149,900.00, the issue of credit affects only Cecile Cooper whose award was the only one which exceeded LIGA's statutory maximum. The damages of the remaining plaintiffs are less than the statutory maximum of $149,900.00 each; therefore, LIGA's obligation is the same whether the credit for the PIGA recovery is offset against the total recovery or against LIGA's statutory obligation. (See Footnote 15 infra.)
LSA-R.S. 22:1386 provides:

*727 (1) Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this Part shall be reduced by the amount of any recovery under such insurance policy.
(2) Any person having a claim which may be recovered under more than one insurance guaranty association or its equivalent shall seek recovery first from the association of the place of residence of the insured except that if it is a first party claim for damage to property with a permanent location, he shall seek recovery first from the association of the location of the property, and if it is a workmen's compensation claim, he shall seek recovery first from the association of the residence of the claimant. Any recovery under this Part shall be reduced by the amount of recovery from any other insurance guaranty association or its equivalent.
Plaintiffs contend that LIGA is obligated for the residual unpaid portion of the damage award up to LIGA's statutory maximum per claim. Plaintiffs argue that the provisions of LSA-R.S. 22:1386 C. are merely to prevent double recovery. In support of their contentions the plaintiffs cite several Louisiana Supreme Court cases wherein the court refused to allow LIGA an offset for "other insurance," under LSA-R.S. 22:1386 A., for amounts received from uninsured motorists coverage, Hickerson v. Protective National Insurance Co., 383 So.2d 377 (La.1980) and Billeaudeau v. Lemoine, 386 So.2d 1359 (La.1980); medical payments under a health insurance policy, Harris v. Lee, 387 So.2d 1145 (La. 1980); and worker's compensation benefits, Senac v. Sandefer, 418 So.2d 543 (La.1982). We do not find these cases applicable or particularly persuasive as they deal only with whether LIGA was entitled to a credit for "other insurance" and not what the credit should be applied to.[14]
LSA-R.S. 1:4 provides that "[w]hen the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." We find no ambiguity in the provision of LSA-R.S. 22:1386(2) which states that "[a]ny recovery under this Part [which in this case is $597,719.64][15] shall be reduced by the amount of recovery from any other insurance guaranty association *728 or its equivalent." Accordingly, the $299,900.00 received by the plaintiffs from PIGA should be deducted from the $597,719.64 recoverable under LSA-R.S. 22:1382, and not the amount of the damage award.[16] LIGA's final obligation to the plaintiffs is $297,819.64, plus legal interest from date of judicial demand and costs of these proceedings.[17] The amounts owed are to be distributed proportionately in accordance with the percentages of recovery on the jury verdict. (See Footnote 15 supra.)
For the reasons set forth the judgment of the trial court is reversed. Judgment is rendered in favor of plaintiffs and against LIGA in the amounts set forth below, plus legal interest on each amount awarded from date of judicial demand until paid:

Cecile B. Cooper $31,619.44
Clarence Ray Cooper, Jr. 63,362.57
Jeffery Wade Cooper 64,273.78
Jeremy Cooper 69,630.01
Miranda Cooper 68,933.84

All costs are to be paid by LIGA.
REVERSED AND RENDERED.
NOTES
[1] On February 28, 1989, Clarence Ray Cooper, Jr. was substituted as party plaintiff after reaching the age of majority.
[2] Suit was also filed against PT Truck Stop, Inc., and the State of Louisiana, Department of Transportation & Development; however, these defendants were later dismissed from the suit.
[3] On April 30, 1986, Champion Insurance Co., the automobile insurer of Cecile Cooper, intervened in suit number 77,711, seeking reimbursement for property damage paid to Cecile Cooper. Judgment was later rendered in favor of Champion pursuant to a stipulation.
[4] Various cross-claims and third-party demands were filed among the defendants; however, they are not pertinent to this appeal.
[5] Pennsylvania is the principal domicile of the insureds S-N-W and Richard C. Huddy.
[6] New Jersey is the state of incorporation of Integrity.
[7] Louisiana is the principal domicile of the plaintiffs and the site of the accident.
[8] The trial court rendered judgment on the plaintiffs' motion for Declaratory Judgment, holding that:

A. The maximum exposure, in this factual case, of the Pennsylvania Insurance Guaranty Association is $299,900.00.
B. The Louisiana Insurance Guaranty Association "stacks" and has exposure, over and above the Pennsylvania Insurance Guaranty Association, in the amount of $149,000.00.
C. The maximum exposure of the Louisiana Guaranty Association, in this factual case, is $149,000.00.
D. The Louisiana Insurance Guaranty Association has exposure for legal interest from date of judicial demand on any amount it would owe the plaintiffs.
This court vacated this judgment, finding that plaintiffs' motion for summary judgment was an unauthorized use of a procedural vehicle because a summary judgment must grant at least some relief sought in the plaintiffs' demand.
[9] The Insurance Guaranty Law of Pennsylvania provides in pertinent part:

40 § 1701.103
(5)(a) "Covered claim" means an unpaid claim, including a claim for unearned premiums, which arises under a property and casualty insurance policy of an insolvent insurer and is:
(i) The claim of a person who at the time of the insured event resulting in loss or liability was a resident of this Commonwealth, .... 40 § 1701.201(b)
(1) The association shall:
(i) Be obligated to make payment to the extent of the covered claims of an insolvent insurer existing prior to the determination of said insurer's insolvency, ... but such obligation shall include only that amount of each covered claim which is in excess of one hundred dollars ($100), and is less than three hundred thousand dollars ($300,000). In no event shall the association be obligated on a covered claim in an amount in excess of the obligation of the insolvent insurer under the policy under which the claim arises.
(ii) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if that insurer had not become insolvent.
[10] We note that LSA-R.S. 22:1382 was amended in 1990 to provide a maximum limit of three hundred thousand dollars per accident or occurrence. The statute was further amended to provide that:

`Accident or occurrence' in this Section means one proximate, uninterrupted, or continuing cause which results in all of the injuries or damages even though several discrete items of damage result, and even though multiple claims and claimants may arise as a result of one such accident or occurrence. A series of claims arising from the same accident or occurrence shall be treated as due to that one accident or occurrence and thus shall be subject to the aggregate liability limit established herein.
LSA-R.S. 22:1382, subd. A(1)(e).
[11] By Acts 1986, No. 211, § 2, Civil Code Article 2315 was amended, severing and transferring the provisions dealing with wrongful death actions to newly enacted Civil Code Art. 2315.4. On authority of LSA-R.S. 24:253, the provisions thus enacted were redesignated as Civil Code art. 2315.2.
[12] We note that the result in the instant case would be different if the Integrity policy had been a split-limit policy with per person limits of liability. The courts have consistently interpreted the limits in split-limit policies as the limits for all damages arising out of the bodily injury to one person. See Albin v. State Farm Mutual Automobile Insurance Co., 498 So.2d 171 (La.App. 1st Cir.), writ denied, 498 So.2d 1088 (La.1986); Remedies v. Lopez, 560 So.2d 118 (La.App.3d Cir.1990), writ denied, 563 So.2d 1155 (La.1990); Shepard v. State Farm Mutual Automobile Ins. Co., 545 So.2d 624 (La.App. 4th Cir.), writ denied, 550 So.2d 628 (La.1989); Carroll v. State Farm Ins. Co., 519 So.2d 265 (La. App. 5th Cir.), writ denied, 520 So.2d 756 (La. 1988).
[13] But compare, Fontenot v. Haight, 764 P.2d 378 (Colo.App.1988); Knipp v. Arizona Property & Casualty Insurance Guaranty Fund, 156 Ariz. 137, 750 P.2d 895 (App.1987); Vickodil v. The Pennsylvania Insurance Guaranty Association, 356 Pa.Super. 325, 514 A.2d 635 (1986).
[14] We note that LSA-R.S. 22:1386 A. was amended by Acts 1990, No. 130, § 1 to specifically include uninsured motorist coverage and medical expense coverage within the definition of "other insurance".
[15] The following represents the individual awards and corresponding deductions for amounts recovered from PIGA:

 TOTAL TOTAL AWARD MAX. % AMOUNTS AMOUNT
 AWARD LESS 33% FOR DUE OF RECOVERED OWED
 NEG. OF BY $299,900 FROM PIGA BY LIGA
 CLARENCE LIGA PIGA (MAX. LIGA
 COOPER RECOVERY LESS PIGA
 RECOVERY)
Cecile Cooper $ 435,229.89 291,604.03 149,900.00 39.44 118,280.56 31,619.44
Clarence, Jr. 159,071.88 106,578.16 106,578.16 14.41 43,215.59 63,362.57
Jeffery 161,371.88 108,119.16 108,119.16 14.62 43,845.38 64,273.78
Jeremy 174,871.88 117,164.16 117,164.16 15.85 47,534.15 69,630.01
Miranda 173,071.88 115,958.16 115,958.16 15.68 47,024.32 68,933.84
 _____________ __________ __________ ______ __________ __________
 $1,103,617.41 739,423.67 597,719.64 100% 299,900.00 297,819.64

[16] The same result was reached by the Fifth Circuit in Sifers v. General Marine Catering Company, 897 F.2d 1288 (5th Cir.1990), and this court in Billeaudeau v. Lemoine, 377 So.2d 1344, 1347 (La.App. 1st Cir.1979), reversed on other grounds, 386 So.2d 1359 (La.1980). For similar results from other jurisdictions interpreting virtually identical statutes see Palmer v. Montana Ins. Guar. Ass'n, 239 Mont. 78, 779 P.2d 61 (Mont.1989); Blackwell v. Pennsylvania Ins. Guar. Ass'n, 390 Pa.Super. 31, 567 A.2d 1103 (Pa.1989).
[17] We note that the statutory limit contained in LSA-R.S. 22:1382 does not prevent an award of interest and costs which exceeds the $149,900.00 limit. Robichaux v. Randolph, 555 So.2d 581 (La.App. 1st Cir.1989), affirmed on other grounds, 563 So.2d 226 (La.1990); Aramburo v. Travelers Ins. Co., 438 So.2d 274 (La.App. 4th Cir.1983), writ denied, 443 So.2d 1110 (La.1983).