609 So.2d 278 (1992)
Bobby SAFFEL, et al., Plaintiffs-Appellees,
v.
U.S. INDEMNITY ASSURANCE GROUP, INC., et al. (Louisiana Insurance Guaranty Association), Defendants-Appellants.
No. 91-745.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1992.
Rehearing Denied December 22, 1992.
Writ Denied March 12, 1993.
*280 Mathews, Atkinson, Guglielmo, Marks & Day, Henry Terhoeve, Baton Rouge, for defendant-appellantLIGA.
Hodge O'Neal, III, Monroe, for plaintiffs-appellees.
Before DOMENGEAUX, C.J., LABORDE, J., and PATIN[1], J. Pro Tem.
LABORDE, Judge.
This case arises out of an automobile accident involving Bobby Saffel and James McArdle. The parties stipulated to the factual issues and questions of liability and damages leaving for trial only issues concerning insurance coverage. The trial court held in favor of the plaintiffs awarding damages in the amount stipulated to as well as exemplary damages, penalties and attorney's fees against the defendant. Defendant now appeals asserting four assignments of error. We find merit in defendant's assignment of error number four, and thus, the decision of the trial court is affirmed in part and reversed in part.

FACTS
On October 26, 1988, plaintiffs, Bobby Saffel and Flient Aldridge Saffel, were proceeding east on U.S. 190, in a 1985 Cavalier, when they were struck head on by a van driven by James McArdle, who was proceeding west on the east-bound side of this divided four lane highway. After the accident, it was determined that McArdle was legally intoxicated with a blood alcohol level of .15.
McArdle was insured by Old Hickory Casualty Insurance Company with a liability policy providing limits of $10,000 per person and $20,000 per accident. It was stipulated that McArdle was 100% at fault in causing the accident and that his intoxication was the cause in fact of the injuries suffered by the plaintiffs. As a result, $11,750 was paid by Old Hickory to Bobby Saffel and his wife Lona McNaughton Saffel and $11,750 was paid to Flient Aldridge Saffel before trial.
The 1985 Cavalier, driven by Bobby Saffel, was purchased by Lona McNaughton in December 1984. Lona McNaughton and Bobby Saffel were married March 30, 1985. This vehicle was covered by an insurance policy issued by State Farm Mutual Automobile Insurance Company. The policy, in the name of Lona McNaughton, provided uninsured motorist coverage (UM) in the amount of $10,000 per person and $20,000 per accident. As a result, Bobby Saffel and Flient Aldridge Saffel each received $15,000 from State Farm, and both executed a release of State Farm under the UM coverage. This settlement included $10,000 from the uninsured motorist coverage and $5,000 under the medical payments provision of the State Farm policy.
In addition to these insurance policies, Bobby Saffel purchased a liability policy from U.S. Indemnity Assurance Company for a 1980 Peterbilt Tractor in the amount of $750,000. This policy also included UM coverage, and thus, plaintiffs sought to collect under this UM policy naming Indemnity as a defendant in this suit. Indemnity was declared insolvent and in October 1989, Louisiana Insurance Guaranty Association (LIGA) was named as a defendant.
Before trial, the parties stipulated that the claims had the following quantum evaluations:
1. Claim of Flient Aldridge Saffel:
a. Compensatory Damages$170,000 (including $34,595.20 medical expenses);
b. Exemplary Damagesleft to be determined by trial court
2. Claim of Bobby Saffel:

*281 a. Compensatory Damages$170,000 (including $34,357.05 medical expenses)
b. Exemplary Damagesleft to be determined by trial court
3. Claim of Lona McNaughton Saffel:
a. Compensatory Damages$25,000
b. Exemplary Damagesleft to be determined by trial court
The trial court held the liability policy of Indemnity included UM coverage in the same amount as liability coverage, namely $750,000. The court also held LIGA was responsible for the claims against Indemnity for compensatory damages up to $150,000 per claim less a $100 deductible and exemplary damages. The court further held LIGA was responsible for damages up to the maximum amount of the policy limits. The trial court ruled exemplary damages were a separate claim from compensatory damages and awarded damages as follows:
1. Bobby Saffel $149,900, plus a 12% penalty and $75,000 for exemplary damages.
2. Flient Aldridge Saffel$149,900, plus a 12% penalty and $75,000 for exemplary damages.
3. Lona McNaughton Saffel$25,000, plus a 12% penalty and $15,000 for exemplary damages.
Lastly, the trial court granted plaintiffs' request for penalties and attorney's fees awarding $100,000 for attorney's fees.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant, LIGA, alleges in the first assignment of error the trial court erred in finding uninsured motorist coverage under the U.S. Indemnity policy (Indemnity) and in finding coverage equal to the liability limits in the amount of $750,000.
The language under the UM endorsement of this policy reads:
We will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motorist vehicle". Section B reads:
B. WHO IS AN INSURED
1. You.
2. If you are an individual, any "family member".
4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".
Under Section F of the policy the following definitions pertinent to this litigation are found:
1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.
3. "Uninsured motor vehicle" means a land motor vehicle or trailer:
b. Which is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or trailer for which the sum of all liability bonds or policies at the time of an "accident" does not provide at least the amount an "insured" is legally entitled to recover as damages resulting from "bodily injury" caused by the "accident";....
The language in the Indemnity policy clearly indicates UM coverage is afforded by this policy and that Bobby and Lona Saffel and Flient Aldridge Saffel are insureds under this policy. Flient Saffel is Bobby Saffel's cousin. He has lived with them for a number of years and while in the army keeps his belongings and address as that of his cousin, Bobby Saffel. Thus, Flient is an insured under the `family member' section of the Indemnity policy.
The main issue involving UM coverage is the amount of coverage that should be afforded under this policy. The declarations page of the Indemnity policy indicates that $50,000 in UM coverage was selected. However, when the UM coverage selected is lower than the liability limits, there must be a valid written waiver showing the insured was offered the higher limits and voluntarily chose the lower limits. Absent *282 a valid written rejection or selection of lower limits, the amount of UM coverage is the liability limit in the policy. See, Arcemont v. Voisin, 468 So.2d 785 (La.App. 1st Cir.1985), writ denied, 474 So.2d 947; Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987).
In the present case, the declarations page indicates the amount of UM coverage is $50,000, and the page listing several quotations of insurance policy prices shows a quotation with $50,000 of UM coverage circled. While this may seem to indicate Bobby Saffel selected lower limits of UM coverage, this is not clear or unmistakable. The expression of a desire not to have UM coverage, however clear, does not necessarily constitute a valid rejection if the expression of rejection does not meet the formal requirement of law. Under Louisiana law, uninsured motorist coverage is provided for by statute and embodies a strong public policy. Jordan v. Honea, 407 So.2d 503 (La.App. 1st Cir. 1981), writ denied, 409 So.2d 654 (La. 1982). In order to have a valid rejection, the rejection must be in writing, and signed by the "named insured" or his "legal representative". La.R.S. 22:1406(D)(1)(a). Roger, supra.
Bobby Saffel signed a number of insurance papers. However, the application listing $50,000 of UM coverage does not state this is a selection of lower limits and the signature at the bottom of the page with many different quotes, including $50,000 of UM coverage circled, also does not state this is a selection by the insured of lower limits. Thus, it is not clear whether the insured was informed that he was allowed UM coverage up to the amount of the liability limits. In addition, plaintiff did sign a number of other blank pages including a form waiver of uninsured/underinsured motorist coverage, however, this page was blank and had not been filled in with any amounts or selection of any limited UM coverage. Public policy, legislative intent, and strict statutory interpretation of exceptions to coverage, all require clear, unmistakable rejection. We do not find it in this instance. In addition, the trial court stated in its written reasons for judgment:
The court rules that the form in dispute in this lawsuit does not comply with these (R.S. 22:1406) requirements and is, therefore, invalid. The court accepts Bobby Saffel's testimony that he signed the form in blank, and further finds that there is no language in the form which informs him that he is entitled to uninsured motorist coverage with the $750,000 limits specified for liability coverage. The court holds the uninsured motorist portion of the policy thus provided the $750,000 limit.
LIGA also contends that even if UM coverage is afforded by the Indemnity policy, Bobby Saffel should not be allowed to recover under the Anti-Stacking provisions of the Uninsured Motorist Law.
The Louisiana Supreme Court has held that three conditions must apply for an individual to stack UM coverage. These conditions include 1) the injured party must have been occupying an automobile not owned by him; 2) there must be UM coverage on the occupied vehicle, which coverage is primary; 3) there must be at least one other UM coverage available to the injured party who has not been fully compensated for his damages. Nall v. State Farm Mutual Automobile Insurance Co., 406 So.2d 216 (La.1981).
LIGA argues that Bobby Saffel fails condition (1) because he is a co-owner of the 1985 Cavalier that he was driving. It is clear from the stipulations that this vehicle was purchased by Lona McNaughton Saffel before her marriage to Bobby Saffel. Therefore, under La.C.C. art. 2341, this vehicle is the separate property of Lona Saffel. The stipulations also indicate the majority of notes and maintenance was paid by the community during the marriage, however, this does not change the separate status of the property acquired before marriage. See, Cloud v. Cloud, 425 So.2d 329 (La.App. 3d Cir. 1982).
After reviewing the record, this court cannot say the trial court's finding is manifestly erroneous or clearly wrong as it is supported by the record. Thus, it will not *283 be reversed. Rosell v. Esco, 549 So.2d 840 (La.1989). This assignment of error lacks merit. The decision of the trial court is affirmed finding UM coverage in the amount of $750,000.

ASSIGNMENT OF ERROR NUMBER TWO
LIGA alleges the trial court erred in holding it responsible in excess of the $300,000 statutory limit.
At the time of the accident and at the time Indemnity was declared insolvent, La. R.S. 22:1382(1)(a) and (b) and La.R.S. 22:1379(3) provided:
La.R.S. 22:1382
(1) The association shall:
(a) Be obligated to the extent of the covered claims existing prior to the determination of the insurer's insolvency,... but such obligation shall include only that amount of each covered claim, ... which is in excess of one hundred dollars and is less than one hundred fifty thousand dollars,.... In no event shall the association be obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises.
(b) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent.
La.R.S. 22:1379 Definitions
. . . . . .
(3) "Covered claim" means an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Part applies issued by an insurer, if such insurer becomes an insolvent insurer after September 1, 1970 and (a) the claimant or insured is a resident of this state at the time of the insured event; ....
See, Cooper v. Huddy, 581 So.2d 723 (La. App. 1st Cir.1991), writ denied, 585 So.2d 552 (La.1991). The statutory limit of $300,000 referred to by LIGA did not become effective until 1990. Cooper, supra. Thus, LIGA is only limited by the obligation Indemnity would have under the policy from which the claim arises. In this case, the maximum limit would be $750,000. LIGA's assignment of error number two is therefore, wholly without merit.

ASSIGNMENT OF ERROR NUMBER THREE
LIGA argues the trial court erred in failing to grant to it a credit for amounts covered by "other insurance".
At the time of this action, La.R.S. 22:1386 provided:
1. Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this Part shall be reduced by the amount of any recovery under such insurance policy.
The Louisiana Supreme Court in interpreting this article has stated that the nonduplication provision of La.R.S. 22:1386(1) applies to ordinary insurance coverage and not to uninsured motorist coverage. See, Cooper, supra; Billeaudeau v. Lemoine, 386 So.2d 1359 (La.1980).
While these cases indicate uninsured motorist coverage does not have to be exhausted before recovering from LIGA, they do not really address the issue involved in this case. In the present case, LIGA is acting as a secondary insurer providing UM coverage to the plaintiffs because the primary insurance coverage was insufficient to cover the plaintiffs' claims. The nonduplication provision was enacted to prevent double recovery, and thus, in the case at bar, the plaintiffs have not recovered twice. The stipulated damages for Bobby Saffel and Flient Aldridge Saffel were $170,000, however, due to the per claim limit available to LIGA, the trial court reduced these damages to $149,900. Thus, the plaintiffs have not been fully compensated for their injuries. It would be *284 unfair to further reduce their recovery by the amount of $10,000 received from State Farm's UM coverage.
The object of the UM statute is to promote recovery of damages for innocent automobile accident victims by making UM coverage available for their benefit as primary protection when the tortfeasor is inadequately insured. Uhrich v. National Fire Ins. Co., 569 So.2d 1062 (La.App. 3d Cir.1990), writ denied, 572 So.2d 96 (La. 1991). In order to implement this objective of providing reparation for those injured through no fault of their own, the Louisiana Supreme Court has held the UM statute is to be liberally construed. Uhrich, supra; Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982).
In 1990, La.R.S. 22:1386(A) was amended by Acts 1990, No. 130, sec. 1 to specifically include uninsured motorist coverage and medical expense coverage within the definition of "other insurance". However, since this amendment was not effective until 1990, we are unable to allow a credit to LIGA for the insurance benefits already received by the plaintiffs. Thus, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
LIGA's final argument alleges the trial court erred in holding it responsible for penalties and attorney's fees.
The statutory purpose of LIGA is set forth in La.R.S. 22:1376, which states that:
The purpose of this Part is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers. (Emphasis supplied)
This court has held that penalties and attorney's fees fall outside the realm of covered claims, and thus, LIGA is not responsible for penalties and attorney's fees for the arbitrary and capricious behavior of the insolvent insurer or for their own behavior. See, John D. Williams v. Champion Insurance Company, 590 So.2d 736 (La.App. 3d Cir.1991); Gauthier v. Champion Insurance Co., 583 So.2d 556 (La. App. 3d Cir.1991).
In light of the foregoing, the decision of the trial court awarding 12% penalties and attorney's fees in the amount of $100,000 is reversed.

CONCLUSION
For the foregoing reasons, the decision of the trial court is affirmed except the award of penalties and attorney's fees which is reversed. The costs of this appeal are assessed equally between the plaintiffs and defendant, LIGA.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] Judge Patin, Retired, participated in this decision as Judge Pro Tempore.