**DICKERSON, Exr., et al., Appellees,**

v.

**THOMPSON; Ohio Insurance Guaranty Association, Appellant.**

[Cite as *Dickerson v. Thompson* (1993), 89 Ohio App.3d 399.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 62640.

Decided Aug. 26, 1993.

**400**

*Murray & Murray* and *James T. Murray,* for appellees.

*Matthew J. Hatchadorian, Thomas B. Ridgley* and *J. Scott Jamieson,* for appellant.

JOHN F. CORRIGAN, Presiding Judge.

Defendant Ohio Insurance Guaranty Association ("OIGA") appeals from the judgment of the trial court which ordered it to pay four "covered claims" in connection with the death of Arthur Dickerson, Jr. For the reasons set forth below, we affirm in part and reverse in part.

## I

On January 15, 1984, Dickerson ("decedent") was shot by a co-worker at his place of employment, National Engineering and Contracting Company ("NECO"). Dickerson later died from injuries, and his widow, Brenda Dickerson, subsequently brought a negligence action against the co-worker and NECO. The jury found both defendants negligent and NECO was ordered to pay a total of $3,945,000 in compensatory damages. Of this sum, $975,000 was awarded for the conscious pain and suffering of the decedent, and the remainder was awarded to the decedent's survivors for wrongful death. The jury further awarded Mrs. Dickerson $1,785,000 in punitive damages.

Thereafter, NECO's general liability insurer, United States Fidelity and Guaranty Company, paid Dickerson $1,125,000, the limits of its primary liability policy.

Dickerson sought further recovery from NECO's excess liability insurer, Mission Insurance Company ("Mission"), which provided coverage up to $15,000,-000. After learning that Mission was insolvent, Dickerson made four claims against OIGA: three wrongful death-related claims (for the decedent's wife and two minor children) and one for the decedent's pain and suffering. OIGA maintained, however, that Dickerson's death resulted in a single compensable claim and further asserted that it was entitled to set off against this claim the payment which Dickerson received from the primary insurer. Dickerson then filed a supplemental complaint against OIGA and the matter was submitted to the trial court upon the stipulations of the parties and the arguments and briefs of counsel. The trial court concluded that OIGA was liable for a total of four covered claims and that it was not entitled to a setoff for the amounts paid by the primary insurer. OIGA now appeals.

## II

OIGA's first and second assignments of error state:

"The trial court erred in holding that each potential beneficiary of a wrongful death action may assert a separate 'covered' claim under R.C. § 3955.01 when the single wrongful death arose from only one covered occurrence.

"The trial court erred in holding that the decedent's survivorship claim for conscious pain and suffering is a separate covered claim as defined by R.C. § 3955.01."

Within these assignments of error, OIGA asserts that it is obligated to pay a single "covered claim" in connection with Dickerson's death.

OIGA was established pursuant to R.C. Chapter 3955 in order to pay "covered claims" which would otherwise be uncompensated due to the insolvency of the insurer. R.C. 3955.03.

"A covered claim" is defined as:

" * * * an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which sections 3955.01 to 3955.19 of the Revised Code apply, when issued by an insurer which becomes an insolvent insurer on or after September 4, 1970, and the claimant or insured is a resident of this state at the time of the insured event or the property from which the claim arises is permanently located in this state.

" 'Covered claim' does not include any amount:

"(1) In excess of three hundred thousand dollars on any claim[.]" R.C. 3955.01(B).

Moreover, pursuant to R.C. 3955.04, this section is to be liberally construed in order to effect the purpose of the Act.

With respect to claims pertaining to wrongful death actions, the Supreme Court in *Wood v. Shepard* (1988), 38 Ohio St.3d 86, 88, 526 N.E.2d 1089, 1091, held that each wrongful death survivor "has a separate claim and that all the separate claims may not be combined and limited to the single person limit of liability * * *."

The court explained:

"Our conclusion that the persons mentioned in R.C. 2125.02 have separate claims for damages emanates from the language of the statute itself. R.C. 2125.02 states that the surviving spouse, the children, and the parents of the decedent are 'all * * * rebuttably presumed to have suffered damages by reason of the wrongful death * * *.' Since each of these persons is presumed to have suffered damages resulting from the death, it logically follows that each such person has a compensable claim. Therefore, absent authorization allowing these separate claims to be treated as a single combined claim for purposes of underinsured motorist coverage, the persons entitled to recover under R.C. 2125.02 have separate and distinct claims." *Id.* at 90, 526 N.E.2d at 1092.

The Supreme Court subsequently limited *Wood v. Shepard, supra,* to uninsured motorist provisions and has upheld unambiguous limitations upon general

liability coverage for all damages arising out of bodily injury, including death, sustained by one person to a single limit of liability. See *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 88, 545 N.E.2d 83, 87–88; *State Farm Auto. Ins. v. Rose* (1991), 61 Ohio St.3d 528, 531, 575 N.E.2d 459, 461; but, see, *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809.

■ Applying the foregoing, we hold that the trial court properly determined that the decedent's wife and two minor children each has a "covered claim" as defined in R.C. 3955.01. Each clearly has a separate compensable claim under R.C. 2125.01 and the Mission policy does not limit coverage in this regard. Rather, it provides:

"1. COVERAGE—

"The company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned to pay on behalf of the Insured for all sums which the Insured shall be obligated to pay by reason of the liability

"(a) imposed upon the Insured by law

" * * *

"for damages on account of:—

"(i) Personal Injuries

" * * *

"caused by or arising out of each occurrence happening anywhere in the world, subject to the geographical limitations as stated in Insuring Agreement II."

"Occurrence" is in turn defined as:

"an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence."

Accordingly, there is no contractual basis for limiting liability, as Mission was obligated to pay all sums imposed by law arising from each occurrence. Thus, each of the wrongful death claims created by operation of law must be separately recognized and paid.

■ With respect to whether there is a fourth claim for the decedent's pain and suffering, we note that such actions are provided for in R.C. 2305.21, which provides in relevant part:

"* * * causes of action for injuries to the person * * * survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto."

Such actions are instituted by the executor or administrator for the benefit of the decedent's estate, and are distinct from an action for wrongful death. *May Coal Co. v. Robinetti* (1929), 120 Ohio St. 110, 115, 165 N.E. 576, 577–578.

Accordingly, given the statutory recognition of the survival of claims for personal injury, the decedent's personal injury action is a distinct and legally cognizable claim for purposes of R.C. 3955.01.

The first and second assignments of error lack merit.

## III

OIGA's third assignment of error states:

"The trial court erred in holding that the Ohio Insurance Guaranty Association is not entitled to offset the sums paid to the plaintiffs by the solvent insurance companies."

Within this assignment of error, OIGA contends that, pursuant to R.C. 3955.13(A), it is entitled to offset the primary insurer's payment from its liability on the excess claim.

R.C. 3955.13(A) provides:

"Any person having a covered claim upon which recovery is also *presently possible* under an insurance policy written by another insurer shall be required first to exhaust his rights under such other policy. *Any amount payable on a covered claim under sections 3955.01 to 3955.19 of the Revised Code shall be reduced by the amount of such recovery.*" (Emphasis added.)

In light of the mandate that this provision must be construed liberally to meet the purposes of R.C. Chapter 3955, see R.C. 3955.04, we note that there is presently no amount payable on a "covered claim" from the primary insurance policy. Rather, the primary insurance has been exhausted, and the "covered claim" arises from the insolvency of the excess insurer. Accordingly, there is no basis for any setoff from the primary insurance proceeds in this instance. Our determination, moreover, comports with the general rules that "contribution cannot be enforced unless the policies cover the same interest in the same property in favor of the same parties against the same casualty or risk" and that an excess insurer is entitled to contribution from a primary insurer only if the primary insurer has not already paid the maximum of its policy. See 16 Couch on Insurance 2d (1983) 631, Sections 62:162, and 499, Section 62:53.

The third assignment of error is overruled.

## IV

■ OIGA's fourth assignment of error states:

"The trial court erred in holding that the plaintiffs are entitled to interest on all amounts found due from the Ohio Insurance Guaranty Association from the date of plaintiffs' filing of their amended petition, October 25, 1990."

In *Horning–Wright Co. v. Great Am. Ins. Co.* (1985), 27 Ohio App.3d 261, 263, 27 OBR 304, 306, 500 N.E.2d 890, 892, the court explained:

"In cases where the dispute is over liability itself and the amount of such potential liability is not in dispute or is readily ascertainable, the court should grant or instruct the jury to grant prejudgment interest if the plaintiff prevails on the liability issues."

In this instance, liability was in dispute and the amount of potential liability was not readily ascertainable because allowance of a setoff was disputed by the parties. Accordingly, prejudgment interest was erroneously awarded. We therefore reverse this portion of the judgment.

The fourth assignment of error is sustained.

The judgment rendered below is affirmed as to the number of claims and is reversed as to the award of prejudgment interest.

*Judgment accordingly.*

PATTON, J., concurs.

JAMES D. SWEENEY, J., concurs in judgment only.