JOURNAL ENTRY AND OPINION
{¶ 1} The Ohio Insurance Guaranty Association ("OIGA") appeals from a decision of the common pleas court which granted summary judgment in favor of Dr. William Witt and his medical group, EENT Associates, Inc., in connection with a medical malpractice action originally brought by Cathleen Lane and her family against Dr. Witt and EENT for failure to diagnose her cancer. Following trial on that case, a jury awarded Cathleen $300,000 on her bodily injury claim and awarded her husband and her daughter $100,000 each for their loss of consortium. The record reflects that at the time the Lanes filed the lawsuit, EENT carried a policy issued by PIE Mutual Insurance Company insuring Dr. Witt. The record further reflects that during the pendency of the Lane lawsuit, PIE became insolvent, thereby triggering involvement by the OIGA in the matter.
 {¶ 2} In a post-judgment settlement, the OIGA, which assumed PIE's obligations to Dr. Witt and EENT pursuant to the Ohio Insurance Guarantee Association Act, paid the Lanes a total of $300,000, an amount equal to the statutory limit per "covered claim" under R.C. 3955.01(D)(2). Dr. Witt then paid the remaining $200,000 judgment to the Lanes from his personal assets.
 {¶ 3} Subsequently, Dr. Witt and EENT filed the instant action against the OIGA, seeking to recover that $200,000, together with the attorney fees incurred in pursuing this action.
 {¶ 4} Both parties moved for summary judgment: Dr. Witt and EENT argued that the OIGA had the obligation to pay up to $300,000 on each claim brought by the Lanes; the OIGA argued that the judgment obtained by the Lanes constituted one "covered claim" and therefore the Lanes' claims are collectively subject to the $300,000 statutory limit.
 {¶ 5} The trial court granted Dr. Witt and EENT's motion for summary judgment, ruling that the malpractice claim and the loss of consortium claims constituted three "covered claims," and therefore ordered the OIGA to pay Dr. Witt and EENT $200,000. The court, however, denied the request for attorney fees.
 {¶ 6} The OIGA now appeals the court's grant of summary judgment in favor of Dr. Witt and EENT; Dr. Witt and EENT cross-appeal the court's denial of attorney fees. We address The OIGA's appeal first. Its sole assignment of error presented for our review states:
 {¶ 7} "The trial court committed prejudicial error when it granted, in part, plaintiffs' motion for summary judgment and when it denied, in part, defendant's cross-motion for summary judgment."[1]
 {¶ 8} The OIGA argues that the medical malpractice claim and loss of consortium claims constituted a single "covered claim" because they arose from injury to a single individual. Dr. Witt and EENT contend those claims constituted three separate "covered claims." The issue for our resolution then concerns whether the Lanes' medical malpractice claim and the loss of consortium claims presented a single "covered claim" or three separate "covered claims."
 {¶ 9} An appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. Summary judgment is appropriate when (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383,385.
 {¶ 10} Under the Act, the OIGA has the obligation to pay all "covered claims" after an insurer has been declared insolvent, up to $300,000 for each "covered claim." That term is defined in R.C.3955.01(D)(1) as "an unpaid claim, * * *, which arises out of and is within the coverage of an insurance policy * * *." The OIGA's obligation to pay a "covered claim" is the same as PIE's contractual obligation under its policy with EENT; therefore, we look to the policy and its provisions for a definition of a "claim."
 {¶ 11} The policy defines a "claim" as "a notification to an insured by a third party or by means of a civil proceeding, alleging injury to which this Policy coverage applies * * *." (Section XVII.A. of the PIE Primary Policy). As defined, a "claim" is equated with a notification or a civil action against an insured alleging injury.
 {¶ 12} More importantly, the policy at issue contains a provision limiting PIE's liability for "each claim" at one million dollars. That provision states, in pertinent part:
 {¶ 13} "The limit of Liability [of one million dollars] stated in the General Declarations, as applicable to "each claim", is the limit of The Company's liability for all damages because of any one claim or suit or all claims or suits first made during the Policy period because ofinjury to or death of any one person * * *." (Emphasis added.)
 {¶ 14} By its own terms, therefore, the policy limits the carrier's liability by aggregating all claims or suits arising out of an occurrence of injury to or death of any one person. Because the OIGA steps into the shoes of the insurer, this limit of liability applies post-insolvency as well.
 {¶ 15} In other words, while separate claims can be made in a lawsuit, all aggregate as a single "covered claim," if they all arise out of injury to "one person." Multiple "covered claims" therefore would arise from injury to multiple persons; but here, the injury occurred to Cathleen Lane, and the resulting consortium claims are derivative of her injury.
 {¶ 16} To our knowledge, two Ohio Appellate Districts have reviewed PIE policies containing this limitation provision in an effort to ascertain the number of "covered claims" presented in a suit and have reached opposite conclusions.
 {¶ 17} In Katz v. Ohio Ins. Guar. Ass'n, Lucas App. L-02-1014, 2002-Ohio-6357, the deceased's mother, in her capacity as the administratrix of her daughter's estate, filed a wrongful death and survivorship action against Dr. Katz, raising a total of four claims on behalf of the deceased's mother, father, and brother. There, the Sixth District, relying on a West Virginia case, West Virginia Ins. Guar.Assn. v. Potts (W.Va. 2001), 209 W. Va. 682, 550 S.E.2d 660, held that each claim made by a person entitled to damages in a wrongful death action constitutes a "covered claim," and therefore, the court concluded the OIGA is liable for four separate "covered claims."
 {¶ 18} In Stanich v. Ohio Ins. Guar. Ass'n, Mahoning App. No. 01 CA 102, 2002-Ohio-5198, the lawsuit brought by the administrator of the estate of the deceased raised a survivorship claim on behalf of the estate and wrongful death claims on behalf of five beneficiaries. There, the Seventh District determined that the suit asserted only a single "covered claim" for injury as defined under the policy, reasoning that if PIE had not become insolvent and the doctor had sought coverage under the policy, he would have had one claim subject to a single limit of liability, and, since the OIGA stands in place of the insolvent carrier, the doctor had one "covered claim."
 {¶ 19} In reaching our decision today, we are persuaded by the analysis and reasoning offered in Igwilo v. Property Cas. Ins.Guar. Corp., 131 Md. App. 629, cert. denied, (2000) 357 Md. 482. There, the Igwilos filed a malpractice suit against Mrs. Igwilo's physician, who was covered by a PIE policy containing an "each claim" limitation identical to the provision in the instant case. She alleged her doctor failed to diagnose her with preeclampsia, which caused her to suffer physical injuries and also caused her child to be born with brain damage. The Igwilos contended that they had asserted three "covered claims": one for the injury to the child, one for injury to Mrs. Igwilo, and one for loss of consortium for Mr. Igwilo. The Property and Casualty Insurance Guarantee Corporation ("PCIGC"), on the other hand, asserted these claims aggregated to form one "covered claim." The issue confronting the Maryland court concerned the number of "covered claims" presented by the Igwilos' tort action.
 {¶ 20} In its analysis the court found two "covered claims" had been presented: one for the injury to the child, and a second one for the injury sustained by Mrs. Igwilo. Notably, the court rejected the effort to construe Mr. Igwilo's consortium claim as a separate "covered claim." As the court explained, "under policies fixing a maximum recovery for `bodily injury' to one person, the vast majority of courts have held that such a `per person' liability limitation applies to all claims of damage flowing from such bodily injury." Id. at 638 (quoting Daley v. UnitedServices (1988), 312 Md. 550, 553, which cited the annotation, Construction and Application of Provision in Liability Policy Limiting the Amount of Insurer's Liability to One Person, 13 A.L.R.3d 1228, 1234 (1967 Supp. 1987)). The court in Igwilo further stated:
 {¶ 21} "In such circumstances, `all damage claims, direct and consequential, resulting from injury to one person, are subject to the limitation.' Indeed, courts have `uniformly' taken the position that `the limit as to recovery for the bodily injuries of one person limits all recovery for damages consequential on that bodily injury, regardless of the fact that such damages are claimed by one who himself suffered bodily injury.'" 131 Md. App. 629 at 638, citing 13 A.L.R.3d 1234 and 1240 (1967 and Supp. 1987).
 {¶ 22} We agree with this analysis and similarly have concluded that
 {¶ 23} because only one injury, to Cathleen Lane, occurred in this case, only one "covered claim" has been presented in the action filed by the Lanes against Dr. Witt and EENT.[2]
 {¶ 24} Dr. Witt and EENT cite Dickerson v. Thompson (1993),89 Ohio App.3d 399, to support their position that the Lanes raised three separate claims and hence three separate "covered claims" to be paid by the OIGA existed. In Dickerson, we held that the three wrongful death claims and the pain and suffering claim filed by the deceased's wife and children with the OIGA constituted separate "covered claims" as defined in R.C. 3955.01. Dr. Witt and EENT's reliance on that case, however, as authority for the position they advance here is misplaced. Dickerson is distinguishable from the facts in this case because the policy here limits liability for "each claim" arising out of injury to or death of any one person; no such limitation provision exists in the Dickerson
policy.
 {¶ 25} We therefore conclude the Lanes' lawsuit presented only one "covered claim" and, the OIGA discharged its obligations when it paid the $300,000 statutory limit to them. Accordingly, this assignment of error is well-taken, the court erred in granting summary judgment to Dr. Witt and EENT, and we therefore reverse that judgment.
 {¶ 26} On their cross-appeal, Dr. Witt and EENT raise the following assignment of error:
 {¶ 27} "The trial court erred by denying appellees, cross-appellants' (physicians') claim for attorney fees for the failure of the OIGA to provide a defense to the full extent of statutory coverage, at $300,000.00 per claim, and for the vindication of physicians' right to that coverage."
 {¶ 28} Dr. Witt and EENT argue that the court erred in not granting them compensatory damages in the amount of attorney fees they have expended in pursuing the instant claim against the OIGA.
 {¶ 29} In this connection, Section VII of the PIE Primary Policy obligates PIE to obtain "legal counsel to represent the interests of the Insured in any claim or lawsuit against said Insured during this policy term." The instant case, entirely separate from the Lanes' action against Dr. Witt and EENT, does not, however, involve a lawsuit against either Dr. Witt or EENT. Under the terms of the policy, therefore, the OIGA had no obligation to provide legal representation for this case. Thus, no contractual provision exists for Dr. Witt or EENT's recovery of attorney fees.
 {¶ 30} Neither is there a statutory basis for that recovery. As set forth in R.C. 3955.18, the OIGA is immune from money damages resulting from the performance of its duties. That statute states: "There shall be no liability on the part of and no cause of action of any nature shall arise against * * * the Ohio insurance guarantee association * * * for any act or omission in the performance of [its] powers and duties under sections 3955.01 to 3955.19 of the Revised Code." See, also, PIEMut. Ins. Co. v. Ohio Ins. Guar. Ass'n, 66 Ohio St.3d 209, 216,1993-Ohio-180 (while an insured is entitled to judicial relief necessary to force the OIGA to perform its statutory duties, no action seeking damages can be maintained against the association for failure to properly identify, settle or pay a covered claim). Accordingly, the court properly denied Dr. Witt and EENT's request for the recovery of attorney fees incurred in pursuing the present action. Therefore, this cross-assignment of error is overruled.
Judgment accordingly.
MICHAEL J. CORRIGAN, P.J., CONCURS; JAMES J. SWEENEY, J., DISSENTS WITH SEPARATE DISSENTING OPINION.
[1] The record in this case reflects that both parties moved for summary judgment. The court, while granting Dr. Witt and EENT summary judgment, never journalized an order denying the OIGA's motion for summary judgment. Furthermore, the OIGA's notice of appeal only references the court's granting of summary judgment to Dr. Witt and EENT. Therefore, despite that OIGA assigns as error the court's denial of its motion for summary judgment, our review and disposition of this case is limited to the court's granting of summary judgment to Dr. Witt and EENT.
[2] We note that all 50 states have provided legislation for a guaranty insurance fund. The states, however, are divided on the issue of whether a "covered claim" encompasses claims derivative to the underlying tort claim. For the jurisdictions that answered this question in the affirmative, see Vickodil v. Pennsylvania Ins. Guar. Ass'n (Pa.App. 1986), 356 Pa. Supp. 325, A.2d 635; Knipp v. Ariz Prop. Cas. Ins. (Ariz. 1987), 156 Ariz. 137, 750 P.2d 895; Florida Ins. Guar. Ass'n,Inc. v. Cole (Fla.App. 1990), 573 So.2d 868; Builders Transport v. S.C.Prop. Gas (S.C.App. 1992), 307 S.C. 398, 415 S.E.2d 419; Cox v.Minnesota Ins. Guar. Ass'n (Minn.App. 1993), 508 N.W.2d 536. For the jurisdictions that hold the opposite view, see Oglesby v. Liberty Mut.Ins. Co., (Okla. 1992), 832 P.2d 834; Cooper v. Huddy (La.App. 1991),581 So.2d 723.