663 So.2d 755 (1995)
Catherine RIVARD, et al.
v.
PETROLEUM TRANSPORT CO., INC., et al.
No. 95-CA-0431.
Court of Appeal of Louisiana, Fourth Circuit.
September 28, 1995.
Rehearing Denied December 19, 1995.
*756 Fred T. Hinrichs, Christovich & Kearney, New Orleans, for Defendant/Appellant Louisiana Insurance Guaranty Association.
Robert M. Murphy, Thomas Keasler Foutz, Gauthier & Murphy, Metairie, for Plaintiffs/Appellees.
Before LOBRANO, ARMSTRONG and WALTZER, JJ.
WALTZER, Judge.
STATEMENT OF THE CASE
On 29 November 1983, Vincent Rivard's wife and minor children filed suit for damages caused by his wrongful death against Gulf Outlet Fuel and Marine Supplies, Inc. (Gulf Outlet), owner of the tractor in which Vincent was riding at the time of his death; Petroleum Transport Company, Inc. (PETCO), owner of the tractor's trailer, and their liability insurer, Transit Casualty Insurance Company (Transit Casualty), alleging that the vehicle's braking system was defective.
On 10 August 1984, plaintiffs amended their petition to add as defendants the State of Louisiana through the Department of Public Safety and the City of New Orleans.[1] On 3 December 1985, Transit Casualty was declared insolvent and placed in liquidation. Subsequently, Louisiana Insurance Guaranty Association (LIGA) was substituted as defendant.
*757 On 19 December 1985, plaintiffs amended their petition to add as defendants Betts Industries, its insurer and Fruehauf Corporation. Betts and its insurer settled plaintiffs' claims and were dismissed.
On 2 March 1986, plaintiffs amended, adding the State through the Department of Transportation and Development as the entity charged with ownership, custody and control of the exit ramp.
On 15 January 1987, plaintiff amended adding allegations against Fruehauf, which subsequently settled plaintiffs' claims and was dismissed.
On 14 October 1988, PETCO and LIGA filed a motion for summary judgment alleging that Vincent was an unauthorized passenger or trespasser in the PETCO vehicle, without PETCO's knowledge or consent. On 6 January 1989, plaintiffs filed a motion for leave of court to amend their petition to add a claim against Transit Casualty/LIGA as omnibus insurer of PETCO's driver, alleging that Vincent's death was caused by the driver's negligence. No new parties were sought to be added, but Transit Casualty's capacity was enlarged. The trial court denied the motion to amend, and granted the motion for summary judgment in favor of PETCO and LIGA. Plaintiffs applied for supervisory writs from this Court, which, on 5 October 1989, granted the writ, reversing that portion of the judgment denying plaintiffs' motion to file the supplemental petition and remanding the case to the trial court.
On 14 November 1989, plaintiffs filed their amending petition. LIGA plead prescription as an affirmative defense.
On 29 November 1990, this Court affirmed the trial court's dismissal of PETCO, but vacated that portion of the judgment dismissing the insurer because of this Court's grant of supervisory relief allowing plaintiff to amend to add a claim against the insurer as omnibus insurer for PETCO's driver.[2]
On 4 March 1993, the trial court granted partial summary judgment in favor of plaintiffs and against LIGA, decreeing that LIGA is the omnibus insurer of PETCO's trailer driven by PETCO's driver, and that LIGA stands fully in Transit Casualty's shoes. LIGA's liability was held to extend to $149,000 per person, rather than the occurrence, with a cap of $500,000, the limits of the Transit Casualty policy.
On 22 February 1994, trial on the merits was held, and the matter was taken under submission. On 11 October 1994, the trial court rendered judgment in favor of plaintiffs and against LIGA in the following amounts:

Catherine Rivard $120,000
Matthew Rivard 95,000
Joseph Rivard 95,000
David Rivard 95,000
Paul Rivard 95,000
 ________
TOTAL $500,000

From this judgment, LIGA appeals. On 7 April 1995, LIGA filed a Peremptory Exception of Prescription in this Court. By order of this Court dated 20 April 1995, the exception was referred to the pending appeal. We deny the exception and affirm the judgment below.

STATEMENT OF FACTS
On 14 August 1983, Vincent Rivard was killed while riding as an unauthorized guest passenger in a 1981 Mack tractor, which was being driven by Ralph Tate, during the course and scope of Tate's employment with PETCO. Tate was also killed in the accident.
The testimony adduced at trial established that Tate was attempting to exit the Pontchartrain Expressway onto Airline Highway. Tate's tractor was pulling a trailer containing 8,370 gallons of gasoline. As Tate began to maneuver the curve of the exit ramp, the tractor turned over and struck a concrete embankment. The gasoline spilled out of the trailer onto the ramp and was ignited. Tate and his passenger were killed as a result of the fire.
The parties do not contest the trial court's factual finding that the substantiated testimony more probably than not showed that the sole cause of the accident was Tate's fault in driving at an excessive rate of speed.

*758 LIGA'S EXCEPTION OF PRESCRIPTION

LIGA's prescription argument is predicated on the fact that the supplemental petition alleging LIGA's liability as omnibus insurer of PETCO's driver, Tate, was filed after the one year prescriptive period had lapsed. LIGA contends that the trial court's finding that Tate's negligence was the sole cause of the accident precludes a finding of solidary obligation with the timely sued defendants, and thus prescription was not interrupted. Trahan v. Liberty Mut. Ins. Company, 314 So.2d 350 (La.1975).
Our review of the record in this case reveals that LIGA's contention to be without merit. LIGA's reliance on the Trahan case is misplaced. The issue considered in Trahan was whether one law suit, litigated to completion in favor of all named defendants, interrupted prescription as to an otherwise untimely separate second law suit filed against essentially different defendants. Plaintiffs therein relied on La.C.C. art. 2097, which provides that suit against one solidary debtor interrupts prescription against all solidary debtors. The Court held that without solidarity, prescription was not interrupted.
In the case at bar, plaintiffs amended their petition in the SAME case to add LIGA, already a named defendant under the policy of insurance issued by its predecessor in favor of PETCO, as successor omnibus insurer under that SAME policy for acts of negligence of their insured, the PETCO driver.
Six years after having ruled in Trahan, the Louisiana Supreme Court made clear that the Trahan rule was inapplicable to suits wherein plaintiffs amended their petition. In Langlinais v. Guillotte, 407 So.2d 1215, 1218-19 (La.1981), a unanimous Supreme Court reversed dismissal of an amending petition, holding, inter alia, that a timely filed tort suit against a person in his individual capacity as the owner and purported operator of a vehicle and against his insurer interrupts prescription on a claim asserted by plaintiff in an amended petition against the same defendant for his vicarious liability and as administrator of his minor daughter's estate alleging that the daughter, not the father, was the negligent driver of the vehicle. The Supreme Court held:
The legal issues presented in Trahan concerned whether one law suit, litigated to completion in favor of all named defendants, interrupted prescription as to an otherwise untimely second law suit filed against essentially different defendants. The issues considered were whether prescription was interrupted as to the second law suit under La.R.S. 9:5801 (which provides that the filing of one law suit interrupts prescription affecting the cause of action therein sued upon against all defendants) and whether La.C.C. 1097 (which provides that suit against one solidary debtor interrupts prescription against all solidary debtors) supported plaintiff's contention that the first suit interrupted prescription on the second suit.... The issue presented in the case presently before us, involving only one law suit, is whether La.C.C.P. art. 1153 allows plaintiff's amended petition to relate back to the date the original petition was filed, thus avoiding the prescriptive bar to the amended claim. That issue was not under consideration in either Trahan or Sizeler [v. Employer's Liability Assurance Corp., 102 So.2d 326 (La.App.Orl.1955)].
This Court held to the same effect in Garrett v. Diaz Drayage Co., 442 So.2d 860, 861 (La.App. 4th Cir.1983), wherein plaintiff sued Fireman's Fund as insurer of Diaz Drayage Company, the owner of the offending vehicle. After the prescriptive period, plaintiff amended to add as defendant Diaz Cartage Company, the actual owner of the vehicle. The trial court found prescription had run and dismissed plaintiff's amended suit against the insurer and Diaz Cartage. This Court reversed, holding in pertinent part:
The Trahan case is factually distinguishable from our case because here we are dealing with an amended petition and not a separate suit which has been finally decided. As explained by the Supreme Court in the case of Baker v. Payne & Keller of La., Inc., 390 So.2d 1272 (La.1980), the statement in Trahan was made in explaining why C.C. Article 2097 did not require a finding that the first suit interrupted prescription *759 against the new defendant and their insurers in the second suit. The insureds named in the first suit had been absolved of liability and could not be solidary debtors with the insured in the second suit.
Thus, the proper standard to be applied to the case at bar is found in the jurisprudence explicating the requirement for relation back of an amended pleading, not of a new lawsuit.
Generally, tort actions prescribe one year from the date of the offense or quasi-offense. La.C.C. art. 3536. The burden of proof rests upon the party pleading prescription. Langlinais v. Guillotte, 407 So.2d at 1216.
La.C.C.P. art. 1153 provides:
When the action or defense asserted in the amended petition ... arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the filing of the original pleading.
In Baker v. Payne & Keller of La., Inc., cited in the Garrett opinion, plaintiff filed a wrongful death action against her deceased husband's employer and its insurer, Maryland Casualty Company, alleging that the accident was caused by the employer's failure to provide a safe place to work, safety procedures and medical and emergency treatment. The suit was held to be barred by the exclusivity of the worker's compensation remedy, and after the one year prescriptive period had passed, plaintiff amended to add executive defendants and Maryland Casualty as their liability insurer. The Louisiana Supreme Court held:
It is well established that Louisiana Code of Civil Procedure article 1153 permits amendment despite technical prescriptive bars where the original pleading gives fair notice of the general fact situation out of which the amended claim or defense arises. In his article, Amendment of Pleadings in Louisiana, 43 Tul.L.Rev. 211, 233 (1969), Justice Tate states: "... The article deliberately adopts no test of identity of cause or legal theory between the original and amending petitions; the amendment's thrust need only be based upon or factually relate to (`arise out of') the `conduct, transaction or occurrence' originally alleged. If the original timely pleading gives actual notice to a party that a formal claim or defense is being made based upon a particular fact situation, no essential protective purpose of a prescriptive statute is violated by permitting relation back of a postprescription amendment based on the same factual situation. Through the original pleading the opponent knows that judicial relief is sought arising from the general factual situation alleged, and he is put on notice that his evidence concerning it should be collected and preserved...."
Where there is "some factual connexity between the original and amended assertions, together with some identity of interest between the original and the supplemental party," amendment should be allowed. 43 Tul.L.Rev. at 234. The only difference between the original and the amended petition is the inclusion of the allegation that Maryland was the insurer of certain of Payne and Keller's employees as well as insurer of the corporation. The transaction or occurrence giving rise to the demand for payment remains unchanged. Since the essence of interruption of prescription by suit is notice, and Maryland clearly had notice of the plaintiff's suit against it and the occurrence upon which the demand was based, the running of prescription as to Maryland was interrupted. Baker v. Payne & Keller of La., Inc., 390 So.2d at 1275. (Emphasis in original.)
In Langlinais, the Court held that the original pleading gave fair notice "of the general fact situation out of which the amended claim arose, and that there is sufficient factual connexity between the original and amended assertions, together with some identity of interest between the original and the supplemental party, such that the amendment should be allowed to relate back...." Langlinais v. Guillotte, 407 So.2d at 1217. Relation back against Guillotte and State Farm was allowed because the original petition gave them notice of the fact that Langlinais sought to recover for injuries suffered as a result of a certain automobile accident involving *760 a vehicle owned by Guillotte and insured by State Farm.
In Langlinais, the Court cited a portion of Justice Tate's article that is particularly applicable to the case at bar:
The fundamental purpose of prescription statutes is only to afford a defendant security of mind and affairs if no claim is made timely, and to protect him from stale claims and from loss or non-preservation of relevant proof. They are designed to protect him against lack of notification of a formal claim within the prescriptive period, not against pleading mistakes that his opponent makes in filing the formal claim within the period.

Langlinais v. Guillotte, 407 So.2d at 1218.
Our Circuit accepted Justice Tate's view:
Article 1153 is designed to permit an amendment if the original petition gives fair notice of the general fact situation out of which the amended claim arises. The out of time amendments need only be based on or factually relate to the conduct or occurrence already alleged. The defendant [in the case at bar, LIGA], through the original pleading, knows the general factual allegations and is put on notice that he should protect his rights. Tate, Amendment of Pleadings in Louisiana, 43 Tul.L.Rev. 211, 233 (1969).
Masson v. Champion Ins. Co. 591 So.2d 399, 402 (La.App. 4th Cir.1991).
The police report shows excessive speed and driver error as the cause of the accident.
On 20 January 1984, Transit Casualty itself alleged Tate's fault in its answer to the original petition, alleging his excessive speed, failing to maintain control, failing to maintain a proper lookout and failing to use ordinary and reasonable precautions dictated by the circumstances.
On 4 May 1984, NOPSI sued Transit Casualty for damages to NOPSI equipment and property allegedly caused by Tate's negligence. Later that month, NOPSI moved to consolidate its suit with the Rivard case.
On 18 June 1984, Fruehauf raised Tate's negligence in its answer to Transit Casualty's Third Party Demand.
Ten months after Transit Casualty's judicial allegation of Tate's fault, six months after Transit Casualty's having received notice from NOPSI of its allegation of Tate's fault, and five months after Transit Casualty's having received notice from Fruehauf of its allegation of Tate's fault, the prescriptive period ran.
Article 1153's liberal application is well settled:
La.C.C.P. art. 1153 is to be applied liberally and without restriction by technical rules. (Citation omitted.) The article only requires that the action arise from the occurrence "attempted to be set forth in the original pleading." Prescription statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished by it. (Citation omitted.) ... The allegations in the original petition were sufficient to put Champion on notice of the facts surrounding the collision with Champion's insured.... La. C.C.P. art. 1153 should be liberally applied so that amendments relate back as long as they are based on the general fact situation originally pleaded. This is true even if a new and independent cause of action is pleaded, the amendment entirely changes the legal theory of the action, adds another claim arising out of the same occurrence, changes the capacity of the parties, adds or drops parties. Tate, 43 Tul.L.Rev. at 231.
Masson v. Champion Ins. Co., 591 So.2d at 403. (Emphasis added.)
In the case at bar, the amended petition changes the capacity of the insurer, but is brought under the same PETCO policy. The insurer was put on notice of this death claim from the original timely filing on 29 November 1983, and was free to investigate the claim and preserve all evidence between that date and the filing of the amending petition on 15 January 1987. It wrote the insurance policy; it knew or should have known that the driver of the PETCO vehicle was its insured under the omnibus coverage it provided to PETCO.
*761 Dismissal of the claim against LIGA advances no interest protected by the laws on prescription. We find nothing in the record to show that Transit Casualty/LIGA is prejudiced by allowing the amended petition to relate back to the filing of the original petition. Under Baker and Langlinais, the exception of prescription is without merit.
FIRST ASSIGNMENT OF ERROR: The trial judge committed reversible error in holding that LIGA's maximum exposure was the $500,000 limit of the Transit Casualty policy, rather than the statutory limitation of $300,000 found in La.R.S. 22:1382.
LIGA contends, essentially, that the 1990 amendments to La.R.S. 22:1382(A)(1)(a)(iii) creating a statutory cap of $300,000 per accident or occurrence should be applied retroactively to this 1983 accident. However, prospective operation of statutes is a general rule, and, as a general rule, is respected by the courts. Dixon, Judicial Method in Interpretation of Law in Louisiana, 42 La.L.Rev. 1661, 1665 (1982).
Planiol aptly articulates the rationale behind this general rule: "a fact and an act are governed by the law under whose aegis they took place.... [T]he solution cannot change on account of the circumstance that when the court rules, the law governing such a fact or such an act is no longer the same." 1 M. Planiol, Treatise on the Civil Law, Sec. 243A (La.St.L.Inst.Trans.1959).

Cole v. Celotex Corp., 599 So.2d 1058, 1063 (La.1992).
La.C.C. art. 6 provides that absent contrary legislative expression, substantive laws apply prospectively only. The 1990 amendment does not provide for retroactive application. The question for this Court is whether the $300,000 cap is substantive or procedural. The Cole decision provides the proper analysis to guide this Court in making that determination:
"Generally, the determinative point in time separating prospective from retroactive application of an enactment is the date the cause of action accrues. Once a party's cause of action accrues, it becomes a vested property right that may not constitutionally be divested." Id.

The Third Circuit rejected retroactive application of the amendment, holding the cap to be substantive and, as such, to be applied prospectively only. Richard v. Teague, 92-17 (La.App. 3 Cir. 5/4/94), 636 So.2d 1160, writ denied 94-1934 (La. 11/11/94), 644 So.2d 388, reconsideration denied 94-1934 (La. 12/16/94), 648 So.2d 384; Saffel v. U.S. Indem. Assur. Group, Inc., 609 So.2d 278 (3 Cir.1992), writ denied 613 So.2d 1003 (La.1993) and writ denied 613 So.2d 992 (La.1993); Veillon v. Louisiana Ins. Guar. Ass'n, 608 So.2d 670 (La.App. 3 Cir.1992).
In a similar case, the Louisiana Supreme Court held the amendments to La.R.S. 22:1386(A) requiring claimants to exhaust remedies against a solvent UM insurer before proceeding against LIGA were substantive.
If the 1992 amendment is applied retroactively in the case sub judice, the plaintiff will lose previously vested substantive rights.
Habeney v. Bellow, 94-1600 (La. 10/28/94), 645 So.2d 624, 625.
The Supreme Court held that retroactive application of limitations on an insured's pre-existing claims would unconstitutionally disturb the insured's vested rights.
The Rivards' cause of action, once accrued, became a vested property right. To apply the 1990 limitation to this 1983 accident would unconstitutionally, without due process of law, divest the Rivards of their property right which vested six years previously. This assignment of error is without merit.
SECOND ASSIGNMENT OF ERROR: The trial court committed reversible error in awarding excessive amounts for loss of consortium to each of the four plaintiff children.
The parties stipulated that the widow would testify that she loved her husband, that they had a good marriage, a good union, that Vincent loved his children and that she suffered economic losses as a result of his death as well as love and affection. They stipulated further that each child would testify that they loved their father and that they lost economic support as well as love and affection when he died, and that it affected or *762 impacted their lives. The birth certificates introduced at trial show that at the time of Vincent's death Matthew was 11, Joseph was 9, Paul was 8 and David was 7. The plaintiffs' economist reported estimated loss of support capacity prior to trial of $165,523 and from trial of $265,894. LIGA did not offer contrary evidence. In addition to the $431,417 economic loss, we note that four young boys will be without the care, nurture and affection of the most significant male in their lives, their father. Each child will enter adolescence and grow to maturity without the counsel and support of his father.
The trial court awarded the uncontroverted economic loss, $431,417, together with $50,000 for Vincent's pain and suffering as he died in the inferno created by LIGA's insured. In addition, he awarded loss of consortium damages to the widow in the amount of $240,000, and to each of the Rivard sons in the amount of $190,000. LIGA was cast in judgment for these sums as proportionally reduced by application of the $500,000 policy limit.
LIGA suggests that the trial court abused its discretion in making its awards for loss of consortium, citing Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976) and Reck v. Stevens, 373 So.2d 498 (La.1979). We disagree.
Our initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured persons is a clear abuse of the "much discretion" of the trier of fact. Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993) cert. den. ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Coco, supra; Bitoun v. Landry, 302 So.2d 278 (La.1974); Spillers v. Montgomery Ward & Co. Inc., 294 So.2d 803 (La.1974).
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard through Coco and Reck to Youn is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiffs under the particular circumstances that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., supra.
The awards to the decedent's four sons are not obviously the result of passion or prejudice, and they bear a reasonable relationship to the elements of the proved damages. While a rational trier of fact could have decided that a lower award would be more appropriate, we cannot conclude from the entirety of the evidence viewed in the light most favorable to the prevailing party in the trial court, that a rational trier of fact could not have fixed the awards of general damages at the level set by the trial judge or that this is one of those exceptional cases where such awards are so gross as to be contrary to right reason. Youn v. Maritime Overseas Corp., 623 So.2d at 1261; Bartholomew v. CNG Producing Co., 832 F.2d 326 (5th Cir.1987).
The standard of review for damage awards requires a showing that the trier of fact abused the great discretion accorded in awarding damages. In effect, the award must be so high or so low in proportion to the injury that it "shocks the conscience." Moore v. Healthcare Elmwood, Inc., 582 So.2d 871 (La.App. 5th Cir.1991). Applying these principles to the record, we find the trial court's award to be amply supported. We find no abuse of the trial court's great, even vast discretion.
*763 THIRD ASSIGNMENT OF ERROR: The trial court committed reversible error in awarding judicial interest from the date of original judicial demand rather than from date of judicial demand against Ralph Tate and LIGA.
La.R.S. 13:4203 provides that legal interest shall attach from date of judicial demand on all judgments sounding in damages, "ex delicto", which may be rendered by any of the courts. LIGA contends that judicial demand was not made on Transit Casualty until it was sued in its capacity as omnibus insurer of PETCO's driver. We have already held that the amending petition alleging the driver's fault relates back to the plaintiffs' original petition. LIGA's predecessor was a named defendant as PETCO's insurer. In its answer, it alleged the driver's fault was the cause of plaintiffs' decedent's death. LIGA argues that interest should run from the date of judicial demand on Tate; however, Tate was never a named defendant; judicial demand has never been made on Tate. Transit Casualty was named as a defendant in the original suit. The supplemental petition at issue herein relates back to that original petition. We find nothing in the authorities cited by LIGA that would justify the interest limitation it seeks. LIGA relies on the lack of solidarity between Tate, PETCO, the City, the State and Fruehauf, as it did in its exception of prescription. LIGA ignores the fact that Transit Casualty was itself an original defendant, albeit in a different capacity, and is solidarily liable with its omnibus insured driver. LIGA's third assignment of error likewise lacks merit.

CONCLUSION AND DECREE
Having found LIGA's exception of prescription and assignments of error to be without merit, we affirm the judgment of the trial court.
AFFIRMED.
LOBRANO, J., dissents with reasons.
LOBRANO, Judge, dissenting.
For the following reasons, I find merit in LIGA's exception of prescription and would reverse on that basis.
On August 10, 1984, plaintiffs filed a First Supplemental and Amending petition adding the State of Louisiana through the Department of Public Safety and the City of New Orleans. Plaintiffs alleged the State was negligent in its construction, design and maintenance of the exit ramp. The State never made a general appearance and was voluntarily dismissed. Plaintiffs alleged the City was negligent in its failure to prohibit trucks from using the exit ramp. The City was dismissed with prejudice on a motion for summary judgment.
Contemporaneously with the state court suit, plaintiffs filed a diversity action in the United States District Court for the Eastern District of Louisiana naming Betts Industries, Inc. and Fruehauf Corporation as defendants. Betts Industries was the manufacturer, designer and seller of the tanker's manhole covers and vents. Fruehauf was the manufacturer, designer and seller of the aluminum tanker. The federal court suit was subsequently administratively closed when plaintiffs elected to pursue their remedy in state court.
On December 19, 1985, plaintiffs filed a Second Supplemental and Amending Petition adding Betts Industries and its insurer, Great American Insurance Company and Fruehauf Corporation. Betts Industries and Great American subsequently settled with plaintiffs.
On March 2, 1986, plaintiffs filed a Third Supplemental and Amending Petition naming the State of Louisiana, through the Department of Transportation and Development as the entity charged with the ownership, custody and control of the expressway exit ramp.
On January 15, 1987, plaintiffs filed a Fourth Supplemental and Amending Petition adding additional allegations against Fruehauf. Fruehauf subsequently settled with plaintiffs on the morning of trial.
On October 14, 1988, PETCO and Transit Casualty filed a motion for summary judgment asserting that PETCO could not be liable to plaintiffs because Vincent Rivard had at all times been an unauthorized passenger or "trespasser" in the vehicle without the knowledge or consent of PETCO. In *764 addition to PETCO's motion for summary judgment, the trial court considered plaintiffs' motion for leave to file a Fifth Supplemental and Amending Petition, in which plaintiffs alleged, for the first time, that the accident was caused by the negligence of the driver, Ralph Tate.
On August 4, 1989, the trial court denied plaintiffs motion for leave to file the supplemental petition and granted PETCO's motion for summary judgment, finding that as a matter of law, neither PETCO nor its insurer Transit Casualty, were liable for the death of Rivard, an unauthorized passenger.
Plaintiffs appealed the entire judgment, and also applied for writs to this court requesting review of the trial court's denial of their motion to file a fifth supplemental petition.
On October 5, 1989, this Court granted writs, reversed that portion of the judgment denying plaintiffs' motion to file the supplemental petition and remanded the case. Shortly thereafter, on November 14, 1989, plaintiffs then filed their Fifth Supplemental and Amending Petition, alleging for the first time, negligence of the driver, Ralph Tate, and naming Transit Casualty in its capacity as the omnibus insurer for Tate. Transit Casualty plead prescription as an affirmative defense.
On November 29, 1990, this Court affirmed the trial court's dismissal of PETCO, but vacated that portion of the trial court's judgment dismissing Transit Casualty because of our writ disposition which allowed the amended petition. Rivard v. Petroleum Transport Co. Inc., 571 So.2d 174 (La.App. 4th Cir.1990), 571 So.2d at p. 175.
On April 7, 1995, LIGA filed a Peremptory Exception of Prescription in this Court. By order of this Court dated April 20, 1995, the exception was referred to the merits.
LIGA's[1] prescription argument is predicated on the fact that the Fifth Supplemental and Amending petition alleging the liability of the driver, Ralph Tate, and Transit Casualty, his omnibus insurer, was filed long after the one year prescriptive period had lapsed. Because the trial court found that the sole cause of the accident was the negligence of Tate, there was no solidary obligation with the timely sued defendants, and thus prescription was not interrupted. In support LIGA principally relies on Trahan v. Liberty Mutual Insurance Company, 314 So.2d 350 (La.1975) and Osborne v. Callegan, 384 So.2d 567 (La.App. 4th Cir.1980).
Plaintiffs counter LIGA's arguments with two assertions. First, they argue that there was a solidary obligation between Transit and its omnibus insured, Tate, and since Transit was originally named in its capacity as the insurer of PETCO, prescription was interrupted. They distinguish the cases relied on by LIGA. Second, plaintiffs argue that their supplemental and amending petition relates back to the timely filing of the original suit and thus prescription did not accrue. They cite Code of Civil Procedure article 1153 in support.
The issue posed by these various arguments is whether a supplemental petition, filed more than one year after the accident, which asserts the negligence of a new party who is insured by the same insurer initially sued, but under different coverage provisions and a different factual basis, has prescribed.

SOLIDARITY
Actions for wrongful death are brought pursuant to Civil Code article 2315, and are subject to the prescriptive period of one year. La.C.C. art. 3492. Once it is shown on the face of the pleadings that prescription has run, the burden shifts to the plaintiff to prove that the claim has not prescribed. Williams v. Sewerage and Water Board of New Orleans, 611 So.2d 1383, 1386 (La.1993). Prescription is interrupted when the obligee commences suit against the obligor in a court of competent jurisdiction and venue. La. C.C. art. 3462. Interruption against one solidary obligor is effective as to all solidary obligors. La.C.C. arts. 1799, 3503. The same principle is applicable to joint tortfeasors, irrespective of whether the obligation is *765 considered joint, divisible or solidary. La. C.C. art. 2324(C). However, a suit timely filed against one defendant tortfeasor does not interrupt prescription against another defendant tortfeasor not timely sued, where the timely sued defendant is ultimately not found liable since no joint or solidary obligation exists. Spott v. Otis Elevator Co., 601 So.2d 1355, 1359 (La.1992); Gioustover v. Progressive American Insurance Co., 561 So.2d 961 (La.App. 4th Cir.1990), writ not considered 566 So.2d 973.
In Trahan v. Liberty Mutual Insurance Company, supra, our Supreme Court held that a timely filed suit against six executive officers and their insurers did not interrupt prescription on an untimely filed suit against a seventh officer and the same insurer because there was no solidarity among the insureds. The initial six officers were found free from fault, and hence, there could be no solidary obligation with the seventh and prescription was not interrupted. The court concluded that the liability of an insurer derives solely from the actions of its insured, which give rise to the cause of action and demand sued upon. The court explained:
There is a similarity between the two suits in that the object or demand of both suits is the same, damages for the wrongful death of plaintiff's husband.
The causes of action, however, are different, a cause of action being an act by a defendant which gives a plaintiff a right to invoke judicial interference on his behalf. A cause of action in tort has no identity independent from the defendant upon whose fault it is based. In the first suit the cause of action was based upon, and it encompassed, only the negligence of the six named executive officers. In the second suit, the cause of action is based upon the negligence of Chrzanowski.
Asserted in that first suit was a right of action (in connection with the wrongful death), not a cause of action, against Liberty Mutual and INA, the insurers of the six. The first suit gave defendants no notice that plaintiff was claiming damages as a result of the negligence of its insured Chrzanowski. That suit was based solely on the alleged negligence of the six named executive officers.
* * * * * *
Liberty Mutual and INA were defendants in the first suit only as insurers of the six named executive officers and are defendants in the instant suit only as insurers of Chrzanowski. Article 2097 being applicable only between solidary debtors, there must be a solidary obligation to plaintiff of a defendant of the first suit and a defendant of the second suit as to the claim asserted in the first suit. Stated another way, there must be a solidary obligation to plaintiff of one or more of the six named executive officers (and, as a consequence, their insurers) and Chrzanowski, as in this case the insurers are liable only in their capacities as insurers of their respective insureds. The judgment in the first suit absolving the six named executive officers (and, as a result, their insurers) means that those executive officers (and their insurers, in that capacity) cannot be solidary debtors with Chrzanowski (and accordingly his insurers in that capacity) as they are not liable to plaintiff on the claim asserted in the first suit." at pps. 353-356.
The thrust of the Trahan decision is that, even though the plaintiffs' initial suit was against the same insurer named in the second suit, plaintiffs only had a right of action against that insurer pursuant to La.R.S. 22:655 (Direct Action Statute) and not a cause of action.[2] The cause of action is dependent on the actions of the insured, and hence the fact that the insurer was named in both suits was of no consequence and prescription would not be interrupted unless the insureds had joint or solidary responsibility.
Trahan was followed by this court in Osborne v. Callegan, 384 So.2d 567 (La.App. 4th Cir.1980). In that case, plaintiff sued Gerald *766 Callegan and his liability insurer, Allstate, for Callegan's negligence as the owner and operator of the vehicle which caused plaintiff's injuries. Two years later, plaintiff filed a separate suit against Vernell Callegan, Gerald's estranged spouse, and Allstate asserting that she was the owner and operator of the offending vehicle. Gerald Callegan was subsequently dismissed via summary judgment and Vernell and Allstate filed an exception of prescription. The trial court maintained the exception and we affirmed. We concluded that Gerald could not be a solidary obligor with Vernell, and therefore the timely suit against Gerald and Allstate did not interrupt prescription as to Vernell and Allstate.
Plaintiffs attempt to distinguish Trahan and Osborne because they each involve two different lawsuits whereas the instant suit involves the amendment of only one suit. With respect to the interruption of prescription based on the solidarity argument of Civil Code Articles 2324(C) and 3503, that is a distinction without a difference.[3] The fact remains, whether added to the same suit or made defendant in a separate suit, if the new defendant is sued beyond the prescriptive period, there must be solidarity with the timely sued defendant to interrupt prescription. See, Spott v. Otis Elevator Co., 601 So.2d 1355 (La.1992); Jones v. State Farm Mutual Automobile Insurance Company, 572 So.2d 767 (La.App. 4th Cir.1990).
In the instant case, plaintiffs never asserted driver fault until their Fifth Supplemental petition, long after the tolling of prescription. Their original suit against PETCO, Gulf Outlet and Transit Casualty asserted faulty brakes and negligent maintenance of the braking system. Like Trahan and Osborne, plaintiffs' timely filed claim against Transit is based on the alleged negligence of its insured, PETCO, whereas the untimely claim against Transit is based on a completely different claim of negligence, by a completely different insured, under different policy provisions. Once the trial court held only the driver at fault for failing to control the vehicle, there could be no solidarity with either PETCO or Gulf Outlet, and thus prescription was not interrupted. Because there was no independent claim of negligence against Transit, its status in the lawsuit depended on the status of its insureds, who were not liable in solido. There was no interruption of prescription.

RELATION BACK DOCTRINE
In the alternative, plaintiffs assert that the Fifth Supplemental and Amending Petition relates back to the filing of the original petition pursuant to Louisiana Code of Civil Procedure Article 1153. In support, plaintiffs rely on Baker v. Payne & Keller of Louisiana, Inc., 390 So.2d 1272 (La.1980); Langlinais v. Guillotte, 407 So.2d 1215 (La.1981); Gunter v. Plauche, 439 So.2d 437 (La.1983) and Garrett v. Diaz Drayage Company, 442 So.2d 860 (La.App. 4th Cir.1983).
Louisiana Code of Civil Procedure Article 1153 provides:
"When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing of the original pleading."
In Ray v. Alexandria Mall, 434 So.2d 1083 (La.1983), our Supreme Court summarized the relation back doctrine for prescription purposes as to late added defendants. The Court stated:
"Art. 1153 is based upon Federal Rule of Civil Procedure 15(c), which provides:
`Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in *767 by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.'

There is a considerable amount of federal jurisprudence interpreting this provision, and these opinions are helpful and persuasive in interpreting our art. 1153.
An amendment under Rule 15(c) which changes the identity of the party or parties sued relates back to the filing of the original pleading as long as three prerequisites are satisfied: (1) the amended claim must arise out of the same occurrence set forth in the original pleading; (2) the purported substitute defendant must have received such notice of the institution of the action that he will not be prejudiced in maintaining a defense on the merits; and (3) the purported substitute defendant must know or should have known that but for a mistake concerning the identity of the proper parties, the action would have been brought against him. (citation omitted) Rule 15(c) alters the generally accepted rule that a new defendant may not be added after prescription has run, and the facts of each case must be viewed carefully subject to the following caveat: This rule does not apply where the amendment seeks to add new and unrelated defendants, since this would be tantamount to assertion of a new cause of action. (citations omitted)
* * * * * *
In keeping with these precepts, we establish the following criteria for determining whether art. 1153 allows an amendment which changes the identity of the party or parties sued to relate back to the date of filing of the original petition:
(1) The amended claim must arise out of the same transaction or occurrence set forth in the original pleading;
(2) The purported substitute defendant must have received notice of the institution of the action such that he will not be prejudiced in maintaining a defense on the merits;
(3) The purported substitute defendant must know or should have known that but for a mistake concerning the identity of the proper party defendant, the action would have been brought against him;
(4) The purported substitute defendant must not be a wholly new or unrelated defendant, since this would be tantamount to assertion of a new cause of action which would have otherwise prescribed." at pps. 1085-1087.
Recently, in Jones v. State Farm Mutual Automobile Insurance Company, supra, this Court applied the Ray analysis. In that case, three passengers in a pickup truck driven by Charles Jones were injured in a collision with a vehicle driven by Bennett Hayes. The accident happened on July 18, 1986. In their original petition, filed November 7, 1986, the three passengers and Jones filed suit against Hayes. Jones was insured by Presidential Fire and Casualty Insurance Company. On July 8, 1987 Hayes sued Jones and Presidential. The suits were consolidated.
On October 7, 1988, more than two years after the accident, the passengers filed an amended petition adding Jones and Presidential as defendants. Judgment was rendered in favor of Hayes against Jones. The trial court granted Presidential's motion to dismiss plaintiff's amended petition because of prescription. After discussing the Ray criteria, we affirmed. We concluded that "[t]he original petition ... alleges that the accident was caused by Hayes. Jones [and his insurers] were not put on notice that they could be liable. Plaintiffs were not mistaken as to the identity of the proper defendant(s)." Id. at 769.
Applying the Ray criteria to the facts of the instant case, leads me to the same conclusion that we reached in Jones. I find that the amended petition asserting driver negligence does not relate back to the filing of the original petition. Even though the accident giving rise to the initial lawsuit is the same, that is the only similarity with the Ray criteria.
*768 In their original petition, plaintiffs named Gulf Outlet and PETCO as owners of the tractor/trailer alleging their improper maintenance of the brakes. Neither was sued in the capacity of Tate's employer or alleged employer. Thus, the pleaded facts supporting the original demand provided no notice whatsoever to Transit Casualty that driver fault and omnibus coverage under its policy was even at issue. LIGA suggests that a valid explanation for plaintiffs not naming Ralph Tate is that the Tate and Rivard families were close friends and were represented by common counsel until shortly before the filing of the Fifth Supplemental and Amended Petition. Irrespective of the strategy which guided plaintiffs' decision not to allege driver fault, Transit Casualty was entitled to assume that it would not be called upon to defend driver fault. Plaintiffs never alleged that the identity of the driver was unknown, which brings us to the third and fourth criteria of Ray.
Tate was not a "substitute" defendant, but clearly an "added" defendant. There was no "mistake" concerning his identity which prevented plaintiffs from naming him in the original petition. From the date of the accident, plaintiffs knew that Tate and Rivard had occupied the vehicle, that Tate was the driver and that both men were killed.
Plaintiffs argue the the Ray criteria is not applicable because Transit's identity remained unchanged. They urge that Ray should be followed only when the amended petition changes the identity of the party or parties sued. I disagree.
Transit Casualty's "identity" in the original petition is not as a tortfeasor. As previously addressed in my discussion of solidarity, Transit Casualty's liability is wholly dependent upon that of its insured. For the six years prior to the amended petition, Transit Casualty's "identity" as a defendant in the lawsuit was solely as the liability insurer of PETCO and Gulf Outlet. In this regard, "capacity" and "identity" are synonymous. In its capacity/identity, Transit Casualty was put on notice that it could be liable for the negligence of PETCO and Gulf Outlet only in failing to properly maintain the braking system on the tractor/trailer. When Tate was added as a tortfeasor, Transit Casualty's capacity/identity changed to that of the omnibus liability insurer of Tate. It was never put on notice, in this capacity, of any possible liability until long after the prescriptive period had run. Thus, Transit Casualty's "identity" cannot be said to have remained the same throughout the litigation for purposes of applying the relation back doctrine.
Plaintiffs reliance on Baker, Langlinais, Gunter and Garrett is also misplaced.
In Baker, the plaintiff originally sued several defendants including his employer and the employer's insurer. The original petition alleged the accident was the fault of the employer and employees and agents of the employer for failing to provide a safe workplace. Under the exclusive remedy provision of the Worker's Compensation Act, the employer was dismissed. Plaintiff then amended to specifically name which employees were at fault. In distinguishing Trahan, from Baker, the Supreme Court stated that the cause of action alleged in the original petition in Baker always remained the same, i.e. the fault of the employees in failing to furnish a safe place to work. Thus, when plaintiffs sought to specifically identify the employees via their amended petition, the amendment related back to the original cause of action and demand. In the instant case, driver fault was not alleged until six years after the accident.
In Langlinais, plaintiff filed suit for injuries he received in an automobile accident with a vehicle owned by Richard Guillotte. Plaintiff originally sued Guillotte as the owner and driver of the offending vehicle and his insurer, State Farm. After the one year prescriptive period had run, plaintiff learned that the real driver was Guillotte's minor daughter. Plaintiff then amended her original petition and asserted the vicarious liability of the father [same defendant], as administrator of his minor daughter's estate alleging the daughter, not the father, was in fact the driver. The lower court sustained defendant's exception of prescription. The appeal court affirmed.
In reversing, the Supreme Court found that because driver negligence was originally *769 pled, the original pleading gave fair notice of the general fact situation out of which the amended claim arose, and that there was sufficient factual connexity between the original and amended petitions, together with some identity between the parties, such that relation back to the original petition should not be barred by prescription. In the instant case, driver negligence was not originally pled, nor was the employer's vicarious liability asserted. Simply put, there was absolutely no connexity between an alleged defective braking system and the driver's negligence. Transit Casualty had no notice of the claim asserted in the amended petition, much less a fair notice.
In Gunter, plaintiff brought a medical malpractice claim against the defendant. More than a year from the operation, plaintiff amended his complaint to allege lack of informed consent. Defendant was subsequently found not liable for malpractice, but was held responsible for failing to obtain the proper consent from the plaintiff. The district court maintained defendant's exception of prescription finding that the initial suit alleging malpractice did not interrupt prescription for the claim of lack of informed consent. The Court of appeal affirmed.
Citing Baker, supra, the Supreme Court reversed. The court noted that the "actors" [defendant] were the same in both petitions. The Court further found that there was a sufficient factual connexity between the two duties owed by the defendant stemming from the one transaction or occurrence of medical service to interrupt prescription and relate back to the original petition. In the instant case, the "actors" [defendants] are not the same. PETCO and Gulf Outlet's alleged negligence was their failure to properly maintain the braking system of the rig. Tate's negligence was in failing to properly control the rig. There is no factual connexity between the two theories of negligence.
Finally, in Garrett, the plaintiff originally sued "Diaz Drayage Company" instead of "Diaz Cartage Company". Fireman's Fund was the liability insurer for Diaz Cartage Company. In allowing the untimely amended petition correcting the name of the company to relate back to the timely filed original petition, this Court found that Fireman's Fund was put on notice of the claim against Diaz Cartage Company because of the striking similarity between the names and because the occurrence giving rise to the claim remained unchanged. I particularly note that this Court, were it not for the similarity in the names, would have been inclined to hold that Fireman's Fund was not given notice of the particular policy sued upon.
In the instant case, the original petition failed to give notice to Transit Casualty that it could be held liable as the omnibus insurer of Tate's negligence. Thus, I conclude that LIGA's exception of prescription should have been maintained.
NOTES
[1] Plaintiffs alleged the State was negligent in its construction, design and maintenance of the exit ramp. The State made no general appearance and was voluntarily dismissed. Plaintiffs alleged the City was negligent in its failure to prohibit trucks from using the entrance ramp. The City was dismissed with prejudice on a motion for summary judgment.
[2] Rivard v. Petroleum Transport Co., Inc., 571 So.2d 174, 175 (La.App. 4th Cir.1990).
[1] Although LIGA and Transit Casualty are used interchangeably in this opinion, their positions are the same.
[2] In the more recent case of Descant v. Adm'rs of Tulane Educ. Fund, 93-3098 (La. 7/5/94), 639 So.2d 246, 249, the Supreme Court noted:

"The direct action statute does not create an independent cause of action against the insurer, it merely grants a procedural right of action against the insurer where the plaintiff has a substantive cause of action against the insured."
[3] The amendment versus separate suit argument is more pertinent to the discussion of Code of Civil Procedure article 1153, discussed infra.